UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERB D. VEST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 09-1083 (RBW) |
| ) | |
| DEPARTMENT OF THE AIR FORCE, et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h), Defendants, the Department of the Air Force, Department of the Army, Central Intelligence Agency ("CIA"), Defense Intelligence Agency ("DIA"), Department of the Navy, Department of Homeland Security ("DHS"), United States Department of Justice ("DOJ"), Federal Bureau of Investigation ("FBI"), United States Department of State, United States Marine Corps, United States Citizenship and Immigration Services ("USCIS"), National Security Agency ("NSA"), Department of Veterans Affairs ("VA"), and Department of Defense ("DOD"), respectfully submit this Statement of Material Facts Not in Genuine Dispute.

**I.      Plaintiff's Request to the Department of the Air Force**

1.     Plaintiff, through counsel, submitted a FOIA request to the Air Force on December 29, 2008, seeking "all records pertaining to Mr. Robert Bryant Morrison, also known as Egbert Clair Morrison, Wayne West and Wayne Forest West, wherever they may be filed or located at the [sic] your agency or in its repositories, and in whatever form or format they may be maintained." The request also stated that: "Mr. Morrison was born either in Montreal, Canada or

Detroit, Michigan, on either May 21, 1922 or May 21, 1924;" "FBI records indicate an immigration violation by Mr. Morrison on April 1, 1943 and a hot checks charge on June 27, 1943;" and Mr. Morrison "enlisted in the Army on February 17, 1947," and "was assigned #AF-38-442-567." Compl. Ex. 1; Declaration of Carolyn Price ("AF Decl.") ¶ 5.

2. On January 24, 2009, the Air Force sent Plaintiff a letter informing him that he had not submitted a proper request for records and that additional information was needed in order for the Air Force to conduct a search in response to his request. Compl. Ex. 3. The letter stated that because the Air Force has "no central index to check for records on an individual by name," Plaintiff needed to provide additional information regarding the subject of his request, such as Mr. Morrison's "affiliation with the Air Force." Id. The letter further stated that once it received the requested information, the Air Force "would conduct an appropriate search" for the records Plaintiff seeks. Id.

3. On July 13, 2009, the Air Force referred Plaintiff's request to the Air Force Office of Special Investigations ("AFOSI"), Air Force Personnel Center ("AFPC"), the Army, and the NPRC for them to conduct searches using the limited information provided by Plaintiff. AF Decl. ¶ 7. This search yielded no information from files maintained by the Air Force. Id. ¶ 8.

4. Using the search terms "Egbert Morrison," "Wayne West," and "Robert Morrison," as well as the serial number and potential birth dates provided by Plaintiff, AFOSI conducted an electronic search for files on the Defense Central Index of Investigations database. AF Decl. ¶ 8. In addition, AFOSI's Office of Special Projects conducted a physical and electronic search of its files using these same search terms and criteria. Neither of AFOSI's searches located any responsive records. Id.

     5.     AFPC conducted a physical and electronic search for records using the search terms "Robert Bryant Morrison," "Egbert Clair Morrison," "Wayne West," and "Wayne Forest West" as well as the serial number and potential birth dates provided by Plaintiff.  AF Decl. ¶ 9. This search was conducted by AFPC through the Air Force's worldwide locator and the Automated Records Management System office.  Id.  The following databases were searched for responsive records: the Military Personnel Data System, the Defense Eligibility Enrollment Reporting System, ARMS, and the National Archives and Records Administration ("NARA") database.  Id.  AFPC's search did not locate any responsive records, with the exception of the NARA database, which revealed the possible existence of two responsive records at the NPRC. Id.  The Air Force does not maintain the NARA database, however, and does not possess or control of any records found in it.  Id.  Those records are maintained by NPRC.  Id.

     6.     On August 4, 2009, the Air Force referred Plaintiff's request to the NPRC for further processing.  Id. at ¶ 11-12.  The NPRC is the repository for personnel, health, and medical records of discharged or deceased veterans from all services during the 20th century.  Id. at ¶ 11. Upon receiving the Air Force's referral of Plaintiff's request, the NPRC conducted a search of its records systems.  Id. at ¶ 12.  It located one responsive record file, which was catalogued under "Robert B. Morrison, SN 38 442 567," as well as a pay voucher that contained information concerning the date and place of Mr. Morrison's discharge.  Id.  The file catalogued under Mr. Morrison's name and serial number was previously stored in an area of the NPRC's warehouse that was severely damaged by fire some years ago.  Id.  The NPRC advised the Air Force that it was in the process of retrieving and reconstructing the file, and that it would then respond directly to Plaintiff regarding the request.  Id.

**II.     Plaintiff's Request to the Department of the Army**

7.     Plaintiff, through counsel, submitted a FOIA request to the Army on December 29, 2008.  Compl. Ex. 4; Declaration of Geraldine V. Yates ("Army Decl.") ¶¶ 5-7.  This request was identical to the request that Plaintiff submitted to the Air Force (see above).  Id.

8.     On January 14, 2009, the Army sent Plaintiff a letter informing him that he had "failed to provide a description of the desired record that enables the Government to locate the record with a reasonable amount of effort."  Compl. Ex. 5.  The letter stated that if Plaintiff had "additional information about the individual's service as a civilian or as a member of the military, or . . . a specific file that leads [Plaintiff] to believe that there are Department of Army records concerning [Morrison]," that Plaintiff "should send another request providing full identification, type of services with relevant dates, and the unit or location of [Mr. Morrison's] work."  Compl. Ex. 5.  Plaintiff's "request lacked the necessary specificity as required by 5 U.S.C. § 552" because Plaintiff failed to "provide the correct name, place of birth, social security number, service number . . . , discharge date, whether the individual was an officer or enlisted member, and the branch of service."  Army Decl. ¶ 8. The Army's letter further informed Plaintiff that it needed "a signed release, a court order, or proof of death" before it could release any third-party privacy information regarding Mr. Morrison.  Compl. Ex. 5.

### III. Plaintiff's Requests to the Central Intelligence Agency

#### A. Plaintiff's Request for Records Regarding James L. Casey

9.  Plaintiff, through counsel, submitted a FOIA request to the CIA on December 4, 2008, seeking "all records on or pertaining to Mr. James L. Casey wherever in CIA files they may be located."  Compl. Ex. 55; Declaration of Delores M. Nelson ("CIA Decl.") ¶ 7.  Plaintiff enclosed a Texas death certificate for Mr. Casey with his request.  Id.

10. In a December 22, 2008 letter, the CIA acknowledged receipt of Plaintiff's request and explained that the CIA needed additional identifying information "before we can effectively search our files."  Compl. Ex. 56.  Specifically, the CIA requested that Plaintiff provide Mr. Casey's "full name, place of birth and citizenship status" and explained that without this information, the CIA might "be unable to distinguish between individuals with the same or similar names."  Compl. Ex. 56.  "Place of birth and citizenship bear directly on the conduct of a search.  Citizenship is both a factor in determining the component(s) which may reasonably be expected to possess responsive records . . . ."  CIA Decl. ¶ 8 n.2.  The CIA further informed Plaintiff that his request for records relating to Mr. Casey "would be held in suspense for 45 days from the date of this letter pending receipt of the biographic information requested above" and provided him with a reference number for use in future correspondence.  Compl. Ex. 56.

11. The CIA never received a response from Plaintiff regarding this letter and closed his request for information regarding Mr. Casey on February 27, 2009.  CIA Decl. ¶ 11.

### B. Plaintiff's Request for Records Regarding Robert Bryant Morrison

12. Plaintiff, through counsel, submitted a FOIA request to the CIA on December 29, 2008, seeking "all records on or pertaining to Mr. Robert Bryant Morrison, also known as Egbert Clair Morrison, Wayne West and Wayne Forest West, wherever they may be filed or located at the CIA." Compl. Ex. 19. Plaintiff's request stated that Mr. Morrison might have been "born in Montreal, Canada or Detroit, Michigan, on either May 21, 1922 or May 21, 1924." Id.

13. The CIA responded in a letter on January 23, 2009, in which it acknowledged receipt of Plaintiff's request and explained that the CIA needed additional identifying information "before we can effectively search our files." Compl. Ex. 20. Specifically, the CIA requested that Plaintiff provide Mr. Morrison's "complete date and place of birth, and citizenship status," and explained that without this information, the CIA might "be unable to distinguish between individuals with the same or similar names." Id. In addition, the CIA's letter informed Plaintiff that to process his request it needed evidence of Mr. Morrison's death or, if he was still living, a signed affidavit from Mr. Morrison waiving his privacy rights. Id. The CIA's letter also informed Plaintiff that his request would be held in suspense "for 45 days from the date of this letter pending receipt of the biographic information for Mr. Morrison," as well as the requested privacy waiver or evidence of death. Id. The CIA's letter concluded by warning Plaintiff that it would close his request if he did not respond. Id.

14. The CIA never received a response from Plaintiff regarding this letter and closed his request for information regarding Mr. Morrison on March 31, 2009. CIA Decl. ¶ 11.

**IV.     Plaintiff's Request to the Defense Intelligence Agency**

15.     Plaintiff, through counsel, submitted a FOIA request to the DIA on December 29, 2008.  Compl. Ex. 10; Declaration of Alesia Y. Williams ("DIA Decl.") ¶ 5.  This request was identical to the request that Plaintiff submitted to the Air Force (see above).  Id.

16.     After reviewing Plaintiff's request for information regarding Mr. Morrison, DIA reasonably determined that its files would not contain responsive information because during the time period identified by Plaintiff in his request—between 1922 and 1947—DIA was not in existence.  DIA Decl. ¶¶ 6, 8.  DIA did not come into existence until 1961.  Id.  Plaintiff's request also provided no information to suggest that there was a connection between DIA and Mr. Morrison.  Id.

17.     On April 6, 2009, DIA sent Plaintiff a letter informing him that it had "determined that the subject of [his] request does not fall under the purview of this agency."  Compl. Ex. 11. Upon receiving DIA's letter, Plaintiff provided no further information to explain the basis for his belief that DIA might possess records regarding Mr. Morrison.

18.     Once DIA learned of Plaintiff's lawsuit, it carefully reviewed Plaintiff's Complaint and all of the attachments thereto.  DIA Decl. ¶ 7.  DIA learned from reading a January 21, 2009 letter from Plaintiff to the FBI, Compl. Ex. 39, that Mr. Morrison had "served in the in the U.S. Army in the European Theatre of Operations, including an assignment to the Military Attaché, United States Embassy, London, England."  Attached to Plaintiff's letter to the FBI was a Petition for Naturalization that Mr. Morrison filed in 1950, which stated that he had served in the U.S. Army from September 25, 1943 until June 27, 1946.  Id.

19. DIA found that this additional information—which Plaintiff had not provided to DIA when he submitted his FOIA request—suggested that it was possible that DIA possessed responsive records because DIA currently manages the Defense Attaché System. DIA Decl. ¶ 8. DIA did not assume responsibility for the Defense Attaché System until 1965, however, and prior to that time, each of the military services managed their own attaché programs. Id. Even so, DIA inherited a limited number of historical military attaché records, such that the information about Mr. Morrison's service as a military attaché at least gave DIA enough information to formulate a search of its relevant files. Id.

20. DIA searched its two primary databases, Web Intelligence Search Engine ("WISE") and InfoSphere Management ("ISM"). DIA Decl. ¶ 9. WISE is a proprietary DIA repository for email traffic that currently holds more than 60 million emails addressed to or originated by DIA, from January 1, 1987 to the present. Id. DIA searched WISE using boolean searches with wild cards and the key words "Robert Bryant Morrison, Morrison Robert Bryant, Robert B. Morrison, Morrison Robert B., Egbert Clair Morrison, Morrison Egbert Clair, Egbert C. Morrison, Morrison Egbert C, Wayne West, West Wayne, Wayne Forest West, West Wayne Forest, Wayne F. West, and West Wayne F." Id. ¶ 10.

21. DIA's search of WISE did not produce any records responsive to Plaintiff's request. DIA Decl. ¶ 10.

22. ISM contains both Human Intelligence ("HUMINT") products, such as Intelligence Information Reports, and Finished Intelligence ("FINTEL") documents, which include material produced by DIA and DOD dating from 1965 to the present. DIA Decl. ¶ 9. The FINTEL collection includes nearly 2.8 million documents from all members of the U.S.

Intelligence Community, and, although it is not fully comprehensive, it is the largest single collection of intelligence records dating back to 1965.  Id.  DIA searched ISM using boolean searches with wild cards and the key words "Robert Bryant Morrison, Morrison Robert Bryant, Robert B. Morrison, Morrison Robert B., Egbert Clair Morrison, Morrison Egbert Clair, Egbert C. Morrison, Morrison Egbert C., Wayne West, West Wayne, Wayne Forest West, West Wayne Forest, Wayne F. West, and West Wayne F." Id. at ¶¶ 10-11.

23. DIA's search of ISM did not produce any records responsive to Plaintiff's request. DIA Decl. ¶ 11.

**V.      Plaintiff's Requests to the Navy and the Marine Corps**

24. Plaintiff, through counsel, submitted FOIA requests to the Navy and the Marine Corps on December 29, 2008.  Compl. Exs. 6, 7; Declaration of Miriam Brown-Lam ("Navy Decl.") ¶ 2; Declaration of Mary V. Dolan ("USMC Decl.") ¶ 2.  These requests were identical to the request that Plaintiff submitted to the Air Force (see above).  Id.

25. On January 13, 2009, the Navy sent Plaintiff a letter informing him that "[b]ased on the information [he] provided in [his] letter," the Navy was "unable to process [his] request under the FOIA."  Compl. Ex. 8.  The Navy informed Plaintiff that it needed additional information and asked him to "identify any affiliation between the Navy and the individual whose records [he] was seeking."  Compl. Ex. 8.  The Navy explained that "without this information, it would not be possible to search for and locate records responsive to the request with reasonable effort."  Navy Decl. ¶ 3.  The Navy's letter also informed Plaintiff that "[m]ilitary records contain personal information that is protected by the Privacy Act, and cannot

be obtained without the signed authorization of the service member whose records are at issue." Compl. Ex. 8.

26.     On January 26, 2009, the Marine Corps sent Plaintiff a letter informing him that because he "indicated that Mr. Morrison was enlisted in the U.S. Army and ha[d] not demonstrated any affiliation with the U.S. Marine Corps nor demonstrated why [he] believe[d] the U.S. Marine Corps would maintain files on Mr. Morrison," it was referring his request to the U.S. Army Human Resources Command. Compl. Ex. 9; USMC Decl. ¶¶ 3-4. The letter further informed Plaintiff that he could expect a response directly from the Army, but provided him with a point of contact in the Marine Corps FOIA Office in the event that he had any further questions. Id. The Marine Corps had no further communication with Plaintiff prior to his initiation of the present litigation.

### VI.    Plaintiff's Request to the Department of Homeland Security and the United States Citizenship and Immigration Services

27.     Plaintiff, through counsel, submitted a FOIA request to USCIS, a component of DHS, on December 29, 2008. Compl. Ex. 17; Declaration of Jill A. Eggleston ("DHS Decl.") ¶ 6. This request was identical to the request that Plaintiff submitted to the Air Force (see above). Id.

28.     After reviewing the FOIA request submitted to it by Plaintiff, DHS determined that the request sought personal privacy information. On January 15, 2009, DHS sent Plaintiff a letter informing him that "[i]n order to continue processing [his] request," it needed a completed Certificate of Identity Form signed by Mr. Morrison. Compl. Ex. 18. DHS enclosed a blank Certificate of Identity Form with its letter. Id.

29.     Despite the fact that DHS's letter had warned Plaintiff that if it did not receive the form within 30 days, his request would "be administratively closed for failure to comply," Plaintiff did not complete the form or explain to DHS that he was unable to provide a third-party waiver. Compl. Ex. 18.

**VII.    Plaintiff's Request to the United States Department of Justice and the Federal Bureau of Investigation**

   **A.    Plaintiff's Requests for Records Regarding Gilbert Enoch Rees, Jr.**

30.     Plaintiff, through counsel, submitted identical FOIA requests on August 18, 2008, to the FBI Headquarters and FBI field offices in Dallas, Houston, Los Angeles, and St. Louis seeking records pertaining to Gilbert Enoch Rees, Jr. Declaration of David M. Hardy ("FBI Decl.") ¶ 5. Plaintiff included a death certificate and an obituary with his requests. Id.

31.     In response to Plaintiff's requests, the FBI conducted searches of the automated and manual indices of the Central Records System ("CRS") and the electronic surveillance ("ELSUR") indices, but these searches yielded no main file records responsive to Plaintiff's requests. FBI Decl. ¶¶ 6-8, 34-37.

32.     Plaintiff submitted a supplemental request seeking a search of all "see" or "cross-reference" files and an ELSUR search for "mentions" and "overhears." FBI Decl. ¶¶ 10-11.

33.     In response to Plaintiff's supplemental request, the FBI conducted a search of "see" files in the CRS at the FBI Headquarters and Dallas, Houston, Los Angeles and St. Louis Field Offices, as well as an ELSUR search that included "mentions" and "overhears." FBI Decl. ¶¶ 12, 34-37. These searches produced no records responsive to Plaintiff's request, which the FBI communicated to Plaintiff in a February 11, 2009 letter. Id. ¶ 12.

34.     Plaintiff appealed to the FBI's "no records" response to the Department of Justice's Office of Information and Privacy ("OIP").  FBI Decl. ¶ 13.

35.     By letter dated May 4, 2009, OIP affirmed the FBI's decision and stated that the FBI had conducted an adequate, reasonable search for records responsive to Plaintiff's request.  FBI Decl. ¶ 15.

        **B.**     **Plaintiff's Requests for Records Regarding Robert Bryant Morrison**

36.     Plaintiff, through counsel, submitted identical FOIA requests to the FBI Headquarters and the Dallas and Houston Field Offices on December 29, 2008, as well as the FBI Legal Attachés ("Legats") in Brussels, Ottawa, and Berlin on January 7, 2009.  FBI Decl. ¶¶ 16-17.  Plaintiff's requests sought records pertaining to Robert Bryant Morrison, also known as Egbert Clair Morrison, Wayne West, and Wayne Forest West.  Plaintiff also asked that a search be conducted under the subject "Church of Satan" for any references to Mr. Morrison.  Id.

37.     Plaintiff's Complaint states that he also sent requests to the FBI's Detroit, El Paso, and San Antonio Field Offices, as well as the FBI Legats in London, Paris, and Mexico City, but the FBI has no record of ever receiving these requests, nor the alleged subsequent correspondence between Plaintiff and these FBI offices.  Compl. ¶¶ 48-49, 52-53, 55; FBI Decl. n.4, n.5.

38.     After determining that Plaintiff sought third-party information, the FBI returned Plaintiff's requests and asked that he provide either proof of death or a privacy waiver from Mr. Morrison.  FBI Decl. ¶¶ 18-19, 21-22, 38-40.  The FBI explained that without proof of death or a privacy waiver, the disclosure of law enforcement records or information about a third person is considered an unwarranted invasion of personal privacy, and such records, if they exist, are

exempt from disclosure pursuant to Exemptions (b)(6) and (b)(7)(C) under FOIA. Id. The FBI also informed Plaintiff that its response should not be taken as any indication of whether or not records responsive to his request exist. Id.

**VIII.   Plaintiff's Request to the United States Department of State**

39.    Plaintiff, through counsel, submitted a FOIA request to the State Department on December 29, 2008. Compl. Ex. 15; Declaration of Margaret P. Grafeld ("State Dept. Decl.") ¶ 4. This request was identical to the request that Plaintiff submitted to the Air Force (see above). Id.

40.    On March 6, 2009, the State Department sent Plaintiff a letter informing him that it needed additional information before it could proceed with the processing of his request, including: an agreement from him to pay fees; a valid third-party authorization for Mr. Morrison; a specific time frame for Plaintiff's request; a narrowed scope for the request; and a "full description of incidents, meetings, events, persons involved, etc., pertaining to the documents requested." Compl. Ex. 16; State Dept. Decl. ¶ 5. The State Department's letter also requested an agreement from Plaintiff to pay fees. Finally, the State Department advised Plaintiff that it was closing his deficient request but inviting him to submit a new request with the additional information that it had requested. Compl. Ex. 16.

41.    Plaintiff never responded to this letter. State Dept. Decl. ¶ 6.

**IX.   Plaintiff's Request to the National Security Agency**

42.    Plaintiff, through counsel, submitted a FOIA request to the NSA on December 29, 2008. Compl. Ex. 12; Declaration of Diane Janosek ("NSA Decl.") ¶ 10. J. This request was identical in substance to the request that Plaintiff submitted to the Air Force (see above). Id.'

43.   On January 20, 2009, NSA sent Plaintiff a letter informing him that his request suggested that he was "seeking records on Mr. Morrison as they relate to criminal activity conducted by him. The National Security Agency is not a law enforcement agency, and it is unlikely that we would have such records." Compl. Ex. 13. NSA directed Plaintiff to submit his "request to local, state or federal law enforcement agencies." Id. In addition, NSA informed Plaintiff that, in the event he was "seeking intelligence information, we can neither confirm nor deny whether intelligence records relating to Mr. Morrison exist" and, therefore, denied his request pursuant to FOIA Exemptions (b)(1) and (b)(3). Id.

44.   Plaintiff appealed NSA's denial by letter dated March 19, 2009, and objected to NSA's having "conducted no search for the requested records." Compl. Ex. 14. Plaintiff did not deny that he was "seeking records pertaining to criminal activity," but instead counsel for Plaintiff stated that counsel could assure "on the basis of personal knowledge that the NSA has many law enforcement agency records in its files, including many from the FBI." Id. In addition, Plaintiff insisted that NSA could not determine that "information pertaining to any intelligence activities engaged in by Mr. Morrison would be immune from disclosure under Exemptions 1 and 3 . . . without having conducted a search and reviewed the responsive records, if any." Id.

45.   NSA acknowledged its receipt of Plaintiff's appeal in an April 2, 2009 letter, which informed Plaintiff that his appeal was 23rd in its processing queue and that he could expect a response within 100 days. NSA Decl. ¶ 13, Attach. D. On August 7, 2009, NSA denied Plaintiff's appeal, explaining in detail why "the existence or non-existence of the information [he] requested is exempt from disclosure" under FOIA Exemptions (b)(1) and (b)(3). Id.

**X.      No Request From Plaintiff to the Department of Veterans Affairs**

      46.     The VA "has no record of any request for records from [Plaintiff] or his attorney in the above-referenced matter." Declaration of Deborah K. McCallum ("VA Decl.") ¶ 3.

**XI.     Plaintiff's Request to the Department of Defense**

      47.     Plaintiff submitted a Privacy Act/FOIA request, dated August 1, 2006, to the Defense Security Service ("DSS"), a separate agency of the DOD that operates under the direction, authority, and control of the Under Secretary of Defense for Intelligence. Declaration of Salvatore J. Demarco, IV ("DSS Decl."), ¶¶ 2-3, Ex. 3. Plaintiff requested "all documents, files, and investigation records related to my military security clearances issued while I was an active duty officer in the United States Army . . . from October 6, 1966 through May 24, 1971." Id. He also provided, among other information, his full name, Social Security Number, and date of birth. Id.

      48.     DSS performed a search for records responsive to Plaintiff's request in the Defense Central Index of Investigations, a consolidated listing of files held by investigative components of DOD, and the Joint Personnel Adjudication System, a consolidated listing of DOD security clearance adjudicative actions. DSS Decl. ¶ 3, Ex.3. These searches failed to reveal any records pertaining to Plaintiff. Id. DSS communicated this fact to Plaintiff in an August 24, 2006 letter, wherein it further explained that prior to the formation of DSS in 1972, personnel security investigations were performed by the military services themselves and that "the large majority" of these pre-DSS investigations "were destroyed at the end of their routine retention period." Id.

49. Plaintiff submitted a second request to DSS, which he believes he "mailed in the year 2008." Compl. ¶ 73. In response to that request, DSS informed Plaintiff by letter dated April 25, 2008, that it had performed another search of the Defense Central Index of Investigations database and that search had failed to produce any documents responsive to his request. Compl. Ex. 57; DSS Decl. ¶ 3.

50. On October 28, 2008, Plaintiff's counsel sent a letter to DSS, in which he "requested a copy of [Plaintiff]'s original request letter and . . . information concerning whether there were other DSS indices which might be searched and what [] search terms [] were used" by in DDS's prior search. Compl. ¶ [7]6.

51. DSS was unable to respond to Plaintiff's counsel's questions regarding its previous search on account of its other pressing responsibilities. DSS Decl. ¶ 3.

Dated: September 18, 2009                     Respectfully submitted,

                                              /s/
                                              CHANNING D. PHILLIPS, D.C. BAR # 415793
                                              Acting United States Attorney


                                              /s/
                                              RUDOLPH CONTRERAS, D.C. BAR # 434122
                                              Assistant United States Attorney


                                              /s/
                                              JENNIFER ZACHARY
                                              Special Assistant United States Attorney
                                              United States Attorney's Office
                                              Civil Division
                                              555 4th Street, N.W.
                                              Washington, D.C. 20530

...

Tel: 202-307-0821
Jennifer.Zachary@usdoj.gov