UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HERB D. VEST | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 09-1083 (JBW) |
| | : |
| DEPARTMENT OF THE AIR FORCE | : |
| et al. | : |
| | : |
| Defendants | : |

MEMORANDUM OF POINTS AND AUTHORITIES SUP-
PORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY
JUDGMENT AND IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

STATEMENT OF THE CASE

A. Administrative Proceedings

This case involves a number of Freedom of Information Act ("FOIA")
requests submitted by plaintiff Herbert D. Vest ("Vest") for records on Robert
Bryant Morrison, Gilbert Enoch Rees, Jr., and James L. Case. One request, for
records pertaining to Vest himself, also involves a Privacy Act ("PA") request.
The nature of these requests and the correspondence exchanged concerning them is
set forth below with regard to each agency which responded to each subject of the
request.

1.  Records on Robert Bryant Morrison

Air Force

By letter dated December 29, 2008, Vest, through counsel, submitted a

FOIA request to the Department of the Air Force ("Air Force") for records

pertaining to Robert Bryant Morrison, also known as Egbert Clair Morrison,

Wayne West, and Wayne Forest West ("Morrison").  See Complaint, Exh. 1.[1]

Vest's letter stated that Morrison was born either in Montreal, Canada, or Detroit,

Michigan, either on May 21, 1922, or May 21, 1924.  Vest noted that FBI records

indicated an immigration violation by Morrison on April 1, 1943 and a hot checks

charge on June 27, 1943.  It also stated that Morrison had enlisted in the Army on

February 17, 1947, and that he had been assigned AF 38-442-567 as a service

number.  Id.

By letter dated January 12, 2009, the Air Force acknowledged receipt of

Vest's request.  Id., Exh.2. By letter dated January 24, 2009, the Air Force advised

that it did not have any central index for individuals by name.  Asserting that

Vest's request indicated a misunderstanding of the FOIA, and that "[t]he FOIA

does not require any agency to analyze, interpret, or creat records by combining  or

compiling information contained in existing records[,]" the Air Force stated that it

"will search for records, not provide answers to questions."  It did neither.  Instead,

---

[1] In this memorandum plaintiff will abbreviate references to exhibits to the Complaint as "Exh."
Where the word exhibit is spelled out, the reference is to exhibits to this memorandum.

it recommended that Vest write Army and the National Personnel Records Center. It then closed Vest's request. Id., Exh. 3.

It did not advise Vest of his right to appeal its determination. Id.

The Army

By letter dated December 29, 2008, Vest, through counsel, submitted a FOIA request to the Department of the Army ("Army") for records on Morrison. Id., Exh.4. This letter contained the same identifying information as was in Vest's letter to the Air Force.

The Army responded by letter dated January 14, 2009, which advised that Vest was required to provide "a description of the desired record that would enable the Government to locate the record with a reasonable amount of effort." Id., Exh.5. It asserted that "The FOIA does not require agencies to respond to questions, to do legal research, compile or analyze data, summarize, or conduct surveys for members of the public." None of this applied to Vest's request. Without taking note of, or acting upon, the identify information that Vest had provided, the Army counseled Vest that if he had additional information about the request subject's "service as a civilian or a member of the military, or know of a specific file that leads you to believe that there are Department of Army records concerning you (sic), you should send another request providing full identification, type of services with relevant dates, and the unit or location of his work." Id.

Vest was also advised that if records did exist, "little third-party information can be provided without a signed release, a court order, or prove of death. Id. The Army did not advise Vest of his right to appeal. Id.

### Department of the Navy and Marine Corps

By letters dated December 29, 2008, Vest, through counsel, submitted FOIA requests to the Department of the Navy ("Navy") and a component thereof, the United States Marine Corps ("Marine Corps"). Id., Exhs. 6-7. These letters provided the same identifying information as did Vest's request letter to Air Force.

By letter dated January 13, 2009, the Chief of Naval Operations advised, inter alia, that it was unable to process Vest's request because the request letter did not identify any affiliation between the Navy and the subject of the request. Accordingly, it stated that it was closing Vest's request. It did not advise Vest of his right to appeal its determination. Id., Exh. 8.

On January 26, 2009, the Marine Corps advised that because Vest had indicated that Morrison was enlisted in the Army but had not demonstrated any affiliation with the Marine Corps, it was referring the request to the Army's Human Resources Command. It did not advise Vest of his right to appeal its determination. Id., Exhibit 9

### Defense Intelligence Agency

By letter dated December 29, 2008, Vest, through counsel, submitted a

FOIA request to the Defense Intelligence Agency ("DIA")for records pertaining to

Morrison. Id., Exh.10.  It provided the same identifying information as did Vest's

request to Air Force.

By letter dated April 6, 2009, DIA advised that it had determined that the

request "does not fall under the purview of this agency."  It closed the request.  It

did not advise Vest of his right to appeal its determination. Id., Exh.11.

National Security Agency

By letter dated December 29, 2008, Vest, through counsel, submitted a FOIA

request to the National Security Agency ("NSA") for records pertaining to

Morrison. Id., Exh. 12. This letter contained the same identifying information as

Vest's request letter to Air Force.

In a letter dated January 20, 2009, the NSA denied Vest's requests on the

grounds that (1) as NSA is not a law enforcement agency it is unlikely that it

would have records relating to criminal activity, and (2) in regard to intelligence

information, it could neither confirm nor deny the existence of such records on

Morrison as they would be classified and thus immune from production under

Exemption 1 of the FOIA. Id., Exh. 13.

By letter dated March 19, 2009, Vest appealed NSA's determination. Id.,

Exh.14.

### Department of State

By letter dated December 29, 2008, Vest, through counsel, submitted a FOIA request to the Department of State ("State") for records pertaining to Morrison. See Exhibit 15. The request provided Morrison name and aliases and alternative birthdates and birthplaces. It specifically requested a search for records maintained at U.S. embassies or associated posts in Canada, England, France, Germany, Belgium and Mexico. Id.

By a lengthy form letter dated March 6, 2009, State acknowledged receipt of Vest's request. The form letter checked off several blocks of information which it said Vest needed to provide. It concluded, however, that his request had been closed, but said he could submit a new request if he provided additional information cited in its letter. Id., Exh.16. It did not advise Vest of his right to appeal its determination.

### U.S. Citizens and Immigration Service

By letter dated December 29, 2008, Vest, through counsel, submitted a FOIA request to the U.S. Citizen & Immigration Service ("CNIS"), a component of the Department of Homeland Security ("DHS") for records pertaining to Morrison. Id., Exh. 17. This letter contained the same identifying information as Vest's request letter to Air Force. However, it also provided the additional

information that Morrison had filed a petition for naturalization and appeared before a U. S. Naturalization Examiner on July 7, 1950. Id.

On January 15, 2009, CNIS acknowledged receipt of Vest's request. CNIS stated that in order to continue processing the request Vest had to provide a notarized Certificate of Identity Form (DOJ 361 Form) signed by Morrison, the names of Vest's counsel's parents, and the "date of entry." It stated that if this information was not provided within 30 days, Vest's request would be administratively closed. Id., Exh.18. It did not advise Vest of his right to appeal its determination. Id.

### Central Intelligence Agency

By letter dated December 29, 2008, Vest, through counsel, submitted a FOIA request to the Central Intelligence Agency ('CIA') for records pertaining to Robert Bryant Morrison. Id., Exh. 19. This letter provided the alternate possible birthdates and birthplaces for Morrison but did not include other identifying information provided in Vest's letter to Air Force. Id. It did provide a detailed list of eleven specific types of records, files or locations which the CIA should search. Id.

By letter dated January 23, 2009, the CIA acknowledged receipt of Vest's request. It advised that it needed "your subject's full name,. . . his complete date and place of birth and citizenship status before it can effectively search [its] files

for information on an individual." Id., Exh. 19. Although Vest had provided all of this information except citizenship status, the CIA stated that if it did not receive the additional biographic information requested within 45 days of the date of its letter, it would close the request. Id.

### FBI Headquarters Field Offices and Legats

By a series of letters dated December 29, 2008, addressed to FBI Headquarters, id., Exh.21, and the FBI's field offices in Dallas, id., Exh. 22; Detroit, id., Exh. 23; El Paso, id., Exh. 24; Houston, id., Exh. 25; and San Antonio, id., Exh.26, Vest submitted, through counsel, requests for records pertaining to Morrison. These requests provided alternative birthdates and birthplaces for Morrison. They also asked that the FBI search under the subject "Church of Satan" for any references on Morrison.

By letters dated January 7, 2009, addressed to FBI Legats in Belgium, id., Exh. 27; Canada, id, Exh. 28; London, England, id., Exh. 29; Paris, France, id., Exh. 30; Berlin, Germany, id., Exh. 31; and Mexico City, Mexico, id., Exh. 32 Vest submitted request for records on Morrison and his alias, Wayne Forest West. The content of these requests was the same as that addressed to FBIHQ (id.. Exh. 21), and also requested that the subject "Church of Satan be searched for any references to Morrison.

By letter dated January 8, 2009, Mr. David M. Hardy ("Hardy"), Section Chief, Records Information and Dissemination Section, Records Management Division, FBI, advised that he was returning to Vest's counsel the requests for records on Morrison submitted to the Dallas and Houston field offices in order for the requester to provide either proof of death or a privacy waiver by the subject. Id., Exh. 33.

On January 16, 2009, Hardy returned the original request submitted on Vest's behalf to his counsel, Mr. Lesar. Contrary to customary practice, no "FOIPA" ("Freedom of Information/ Privacy Act") number was assigned to the request. Hardy advised that before the FBI processed a request on another individual it asked that either proof of death or a privacy waiver by the subject of the request be provided. Hardy did not advise Vest that he had a right to appeal this determination. Id., Exh. 34.

By letter dated January 16, 2009, Special Agent in Charge Andrew Arena of the FBI's Detroit field office wrote that the Detroit field office was referring Vest's request to FBI Headquarters ("FBIHQ"). Id., Exh.35.

By letter dated January 20, 2009, Mexican Legat Robert B. Loosie, responded to Vest's FOIA request to the Mexican Legat by stating that "such requests" must be made to the Office of General Counsel at FBIHQ. Id., Exh.36.

By letter dated January 21, 2009, the FBI's Deputy Legat in London, writing for her chief, Legat Mark S. Bullock, advised that Vest's request had been forwarded to FBIHQ. Id., Exh. 37.

On January 21, 2009, the Legat in Paris, France, Robin Gazawi advised that all FOIA requests were handled by FBIHQ and attached a printout from the FBI's FOIA/PA website. Id., Exh. 38.

By letter dated January 21, 2009, Vest, through counsel, responded to Hardy's January 8, 2009, letter (Exh.33) which asked that Vest provide proof of death or a privacy waiver before it processed his request. Lesar stated that Vest was unable to provide either proof of death or a privacy waiver for Morrison. He added, however, that this did not relieve the FBI of its obligation to make a search to determine whether or not the subject of the request is deceased. Additionally, he stated that if responsive records existed, the FBI must process them unless it could show that the putative privacy interest outweighed the public interest in disclosure. He further provided information regarding the nature of the public interests involved in the case. In light of this, Lesar returned to Hardy the Dallas and Houston field office requests which Hardy had returned to Lesar. Id., Exh.39.

By letter dated February 6, 2009, Hardy informed Vest that his request on Morrison had been forwarded to FBIHQ by the Berlin Legat but was being

returned before being processed so Vest could submit either proof of death or a privacy waiver. Vest was not advised of his right to appeal. Id., Exh. 40.

On March 10, 2009, Hardy advised that the FBI was returning requests for records on Morrison that had been submitted to FBIHQ, the Dallas and Houston field offices, and the Ottawa, Berlin and Brussels field offices. Hardy again insisted that Vest submit proof of death or a privacy waiver by Morrison before the request was processed. Vest was not advised of his right to appeal. Id., Exh.41.

2. Records on Gilbert Enoch Rees, Jr.

FBI Headquarters

By a series of letters dated August 18, 2008, addressed to FBIHQ, id., Exhi.42; and the FBI's field offices in Dallas, id., Exh.43; Houston, id., Exh.44; Los Angeles, id., Exh. 45; and St. Louis, id., Exh.46, Vest, through counsel, submitted FOIA requests for records pertaining to Gilbert Enoch Rees, Jr. ("Rees"). The requests stated that Rees was born July 24, 1924 and died July 2, 1955. Two newspaper articles and a certificate of death were attached as evidence of his death. His Social Security Number was given as 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.

By letter dated September 3, 2008, David M. Hardy, Chief of the Record/Information Dissemination Section at FBIHQ advised that it had conducted a search of its Dallas field office files (Request No. 1118955) limited to main files

and ELSUR ("Electronic Surveillance") indices and located no responsive records. Id., Exh. 47.

Br letter dated September 10, 2008, Hardy responded to Vest's request to FBIHQ, which the FBI assigned Request No. 1119236. Hardy stated that a search limited to main files had located no responsive documents. He also advised Vest of his right to appeal the "no records located" finding regarding the FBI's search of main files. Id., Exh.48.

On September 16, 2008, Hardy acknowledged receipt of Vest's requests to the Houston, Los Angeles and Saint Louis field offices and assigned them Request No. 1119676. He stated the FBI was searching the indices to FBIHQ's Central Records System and would advise Vest of he results thereof. Id., Exh.49.

By letter dated October 16, 2008, the FBI responded to Vest's request for records of the Houston, Los Angeles and St. Louis field office files by advising that a search limited to "main files in the central records system" of those offices had located no responsive records. Vest was advised of his right to appeal the FBI's "no records" response regarding its search of main file references. Id., Exh. 50.

By letter dated November 10, 2008, Vest's counsel responded to the FBI's response to the Dallas field office request by requesting a search of all cross-references, including all "buildups, breakdowns or logical variants of Rees's name.

He also asked for clarification of whether the search of ELSUR indices included "mentions" or "overhears." Id., Exh. 51.

By letter dated February 11, 2009, which captioned the Dallas field office request (Request No. 1118955), FBIHQ advised that a search of "see" references and ELSUR indices of the Houston, Los Angeles and St. Louis field offices had located no responsive records. Id., Exh.52.

By letter dated February 14, 2008, Vest, through counsel, appealed the FBI's February 11, 2008 "no records" responses. He also appealed the FBI's determination that if he had reason to believe that other field offices might have responsive records, he would have to submit requests to them. Id., Exh. 53.

By letter dated March 11, 2008, the Office of Information and Privacy ("OIP") acknowledged receipt of Vest's appeal and assigned it No. 09-1191. Id., Exh. 54.

3. James L. Casey

Central Intelligence Aency

By letter dated December 4, 2008, Vest, through counsel, submitted a FOIA request to the CIA for records pertaining to James L. Casey. The letter enclosed a Texas death certificate indicating that James L. Casey had died on October 21, 2000 in Aransas County, Texas. Id., Exh. 55.

By letter dated December 22, 2008, the CIA acknowledged receipt of Vest's

request and stated that it would hold his request in abeyance for 45 days pending

receipt of certain biographic information on Casey. The CIA made no

determination of the request and did not advise Vest of his right to appeal. Id.,

Exh.56. .

4.  Records on Herb D. Vest

Defense Security Service

By letter of unknown date but believed by Vest to have been mailed in the

year 2008, Vest submitted a request to defendant Defense Security Service ("DSS)

for records on himself.

By undated letter, S. J. DeMarco, IV, Chief, Privacy Act Branch, advised

Vest that his request had been received on an unspecified date.  Describing it as a

Privacy Act request, DeMarco stated that a search which included the Defense

Central Index of Investigations ("DCII"), had located no records identifiable with

him. Id., Exh.57.

The DSS did not advise Vest of his right to appeal.

By letter dated October 22, 2008, Vest, now represented by counsel,

responded to DeMarco through counsel.  Counsel requested a copy of Vest's

original request letter and stated that Vest's request should have also been made

under the FOIA, if it had not been.  He also requested information concerning

whether there were other DSS indices which might be searched and what the search terms that were used were. Id. Exh.59.

B. Additional and Corroborating Information Pertaining to Requests

Since Vest submitted his requests and received defendants' responses to them, he has obtained additional information which sheds further light on or corroborates the information provided in his requests. A brief summary of this information is set forth below.

Most of the additional information was obtained from the National Archives and Records Administration's National Personnel Records Center ("NARA's NPRC"), which released a copy of Air Force records it maintained on Morrison. These records confirm the basic identifying information which Vest provided to defendants, but which they refused to use to conduct searches of their records systems.

The NPRC file on Morrison shows that he used two different birthdates on his various military records, sometimes May 21, 1922, see Exhibits 2, and 24 and sometimes May 21, 1924, see Exhibits 3, 4, 5, 15, and 21. The records also reflect to different birthplaces, Montreal, see Exhibits 2, 3, 15, and 24; and Detroit, see Exhibits 5, and 21.

Morrison served in both the Army and the Air Force. He enlisted in the Army on September 25, 1943 and was discharged on June 27, 1946. He was

"transferred" to the Air Force by order dated September 26, 1947, <u>see</u> Exhibit 6.
According to VA Form 3101, his active service with the Air Force was from
December 17, 1947 through September 6, 1950.  <u>See</u> Exhibit 7.  His military
service number was the same for both the Army and the Air Force.  His DD 214
Report of Separation form gives his service number as AF 38442567, <u>see</u> Exhibit
3, but His Enlisted Record and Report of Separation form states his Army service
number was 38442567.  <u>See</u> Exhibit 2. War Department Form 370 has an "RA,"
apparently standing for "Regular Army," crossed out, followed by "AF 38442567."
<u>See</u> Exhibit 4.    A petition for naturalization which he filed on July 7, 1950, states
that he served actively in an active duty role in the U.S. Army under Serial No.
38442567.  <u>See</u> Exhibit 26.

Morrison's  NPRC file indicates extensive travel, and this as well as his
various duties and activities raise questions as to whether agencies such as not only
the Air Force but also the INS, the State Department and the FBI  have records
which have not been adequately searched for or located.

Notably, Morrison served in the Military Attache's office at the American
Embassy in London, <u>see</u> Exhibit 13, he was awarded the European African Middle
Eastern Theatre Service Medal, <u>see</u> Exhibit 2, and traveled in Europe, <u>see</u> Exh. 25.
These records obviously implicate the possibility of State Department records
(passport and visa records among them, and the file contains evidence of direct

communication by the State Department regarding Morrison. Thus a May 4, 1946
letter states that the Secretary of State does not object to Morrison's release in the
United Kingdom for a period of twelve months for the purpose of employment
with the American Embassy. See Exhibit 12. On May 20, 1946, the Foreign
Service offered him a position at the American Embassy in London. See Exhibit
13.

The U. S. Citizens and Immigration Service ("CNIS") refused to process
Vest's request unless he provide a Certificate of Identity form signed by Morrison.
See Complaint, Exh. 18. However, CNIS did not raise these objections regarding
another person who submitted a request for records on Morrison subsequent to the
request made by Vest. It did in fact conduct a search, and by letter dated August
31, 2009, it advised that it had located 302 pages responsive to her request for
records on Morrison. See Exhibit 28. Citing Exemptions 2, 5, 6, 7(C) and 7(E),
5 U.S.C. § 552(b)(2), (5), (6), 7(C) and 7(E), CNIS withheld 298 pages pursuant to
these exemption claims. It released two other pages in full and two in part

The four disclosed pages are newspaper clippings which pertain to Wayne
West, the person Vest believes to be an alias for Morrison. See Exhibit 29. The
disclosure of this information in the CNIS file on Morrison also raises questions
about the failure to search or adequacy of searches performed by agencies such as
the FBI and its various components.

C. Filing of Lawsuit

On June 11, 2009, Vest filed this lawsuit.

## ARGUMENT

## I. VEST EXHAUSTED HIS ADMINISTRATIVE REMEDIES AGAINST THE AIR FORCE, ARMY, CIA, DIA, NAVY, MARINE CORPS, DHS, AND STATE DEPARTMENT

Defendants Air Force, Army, CIA, DIA, Navy, Marine Corps, DHS, and the

State Department claim that Vest failed to exhaust his administrative remedies. It

puts forth essentially three claims in support of this argument. Each will be

addressed in the sections which follow.

A. Vest Properly Brought Suit Where He Was Not Required to File a Notice of Appeal Because of Defendants Failure to Advise Him Of His Right to Appeal

Because he brought suit without appealing the responses he received from

these agencies, they argue that Vest "attempts to avoid" the exhaustion

requirement "by alleging that the letters he received from the agencies in response

to his FOIA requests failed to inform him of his right to appeal." Defs' MSJ at 31-

32.

Defendants concede that "[c]ourts have treated an agency's failure to notify

a requester of his right to appeal a FOIA denial as constructive exhaustion of the

requester's administrative remedies." Id. at 32, citing Nurse v. Sec'y of Air Force,

231 F.Supp.2d 323, 328 (D.D.C.2002). Defendants claim, however, that this "doctrine is inapplicable to the present circumstances because [Vest] never perfected his FOIA requests to the agencies." Id.

The law regarding exhaustion of administrative remedies in FOIA cases is clear. In Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 67 (D.C.Cir.1990), the Court of Appeals held that "the agency has a duty to notify appellant `of the right . . . to appeal to the head of the agency' in cases where no records are found in its response as well as those in which specific records are denied.")(quoting 5 U.S.C. § 552(a)(6)A) (i). If the agency does not make this determination within 20 working days after receipt of plaintiff's request, plaintiff has constructively exhausted administrative remedies and may proceed to court. Pollack v.Department of Justice, 49 F.3d 115, 118-119 (4th Cir.1995)("Under FOIA's statutory scheme, when an agency fails to comply in a timely fashion with a proper FOIA request, it may not insist on the exhaustion of administrative remedies unless the agency responds to the request before suit is filed."). "The FOIA is considered a unique statute because it recognizes a constructive exhaustion doctrine for purposes of judicial review upon the expiration of certain relevant FOIA deadlines." Nurse, supra, 231 F.Supp.2d at 328.

An agency response that merely acknowledges receipt of a request does not constitute a "determination" under the FOIA in that it neither denies records nor

grants the right to appeal the agency's determination. Martinez v. FBI, 3 Gov't

Disclosure Sen. (P-H) 7 83,005, at 83,435 (D.D.C. Dec. 1, 1982).

The claims made by defendants Air Force, Army, CIA, DIA, NAVY,

Marine Corps and the State Department that Vest failed to exhaust his administra-

tive appeals even though he was not given notice of his right to appeal are without

merit. Either they actually or in effect denied the request without giving Vest

notice of his right to appeal, or they failed to make a timely determination of the

request. Either way, Vest exhausted his administrative remedies.

The Air Force's claim is further undercut by the fact that it subsequently

conducted searches for records even though it previously claimed the requests did

not reasonably describe the materials sought. For example, although the Air Force

initially refused to process Vest's request, claiming it lacked a centralized index. It

sought to fob the request off on the Army because Vest stated he had enlisted

there, even though Vest gave an Air Force service number. However, after Vest

filed suit, Air Force searched the Air Force Personnel Center, the Air Force Office

of Special Investigations ("AFOSI"), and the AFOSI's Special Projects Office.

See Defendants' MSJ, Exh. A, Declaration of Carolyn Price, ¶¶ 7-8.

B. Vest Reasonably Described His Requests

Defendants Air Force, Army, CIA, DIA, Navy, Marine Corps and State

Department contend that Vest did not reasonably describe his request for records

pertaining to Morrison, and that his request for records on Casey is similarly
deficient with respect to the CIA. Defs' MSJ at 26. There is no basis for this
contention.

The FOIA, 5 U.S.C. § 552(a)(3)(A) (2006), amended by the OPEN
Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524, requires that a
requester must "reasonably describe" the materials he is seeking. The legislative
history of the 1974 FOIA amendments indicates that a description of a requested
record is sufficient if it enables a professional agency employee familiar with the
subject area to locate the record with a "reasonable amount of effort." H.R. Rep.
No. 93-876, at 6 (1974), reprinted in 1974.S.C. C.A.N. 6267, 6271; see, e.g.,
Truitt v. Dep't of State, 897 F.2d 540, 544-45 (D.C. Cir. 1990) (discussing
legislative history of 1974 FOIA amendments as related to requirements for
describing requested records).

### Air Force

By letter dated December 29, 2008, Vest submitted a request to the Air
Force for records on Robert Bryant Morrison, also known as Egbert Clair
Morrison, Wayne West and Wayne Forest West (hereafter "Morrison"). He gave
two possible birthdates and two possible birthplaces for Morrison. He also stated
that FBI records indicated an immigration violation by Morrison ion April 1, 1943
and a hot checks charge on June 27, 1943. See Complaint, Exh. 1.

By letter dated January 12, 2009, Air Force acknowledged receipt of the request. Its next and final communication was dated January 24, 2009. It advised that it had "no central index to check for records on an individual by name." It asserted that if Vest could provide "`additional information such as `your affiliation with the Air Force,'" it would conduct an appropriate search. Id., Exh. 3. However, it went on to claim that Vest request indicated a misunderstanding of the FOIA and that "[t]he FOIA does not require any agency to analyze, interpret, or create records by combining or compiling information contained in existing records." It recommended that Vest write the Army and the National Personnel Records Center and then closed the request. Id.

The Air Force's initial response to Vest's request was a bureaucratic effort simply to get rid of Vest's request any way it could. The notion that the Air Force is incapable of locating records that are potentially responsive to a particular person where his name, aliases, and likely birthplaces and birthdates are provided, along with an Air Force service number, FBI information about his criminal record, and the date he enlisted in the Army, is preposterous. Indeed, it would seem to have rather disastrous national security implications. The implication of Air Force's initial response is that if it gave this sort of identifying information about a terrorist suspect it wouldn't be able to search anything.

The alleged fact that the Air Force does not have a central index to

check for records on an individual by name" is irrelevant. Clearly, it is not credible that the Air Force has no means of locating named individuals, particularly when an alleged Air Force identification number is given. The fact that Vest submitted a request which reasonably described the records sought is also established by the fact that the Air Force concedes that it did conduct searches after suit was filed, without the provision of any information additional to that originally submitted by Vest. See Defendant's Motion to Dismiss or for Summary Judgment ("MD/SJ"), Exh. A, Declaration of Carolyn Price, ¶¶ 7-9. Yet Air Force continues to litigate this issue, even though its position that the request did not reasonably describe the records sought is contradicted by the fact that it did subsequently conduct a search.

### The Army

On December 29, 2009, Vest submitted a request for records on Morrison to the Army. It contained the same description of the records sought and pertinent information as did his letter to the Air Force. See Complaint, Exh. 4. By letter dated January 14, 2009, the Army responded to this request by making claims similar to those advanced by the Air Force. Thus, it asserted that FOIA does not require it "to respond to questions, to do legal research, compile or analyze data, summarize or conduct surveys for members of the public." See Complaint, Exh. 5. Of course, Vest had requested none of these things.

The Army also asserted that if Vest had additional information, he should make a new request "providing full identification, type of services with relevant dates, and the unit or location of his work." Id.

At no point in its letter did the Army state that Vest's letter provided an insufficient basis for it to conduct a search for responsive records. Unless the Army is unable to locate records pertaining to persons who provide their names, date and place of birth, there is no basis whatsoever for such a claim.

In support of its claim, the Army has submitted its Exhibit B, the Declaration of Geraldine V. Yates. Yates claims that upon reviewing Vest's request she immediately realized that it "lacked the necessary specificity as required by 5 U.S.C. § 552." The requestor, she says, "must provide the correct name, place of birth, social security number, service number . . ., a discharge date, whether the official was an officer or enlisted member, and the branch of service." Yates Decl., ¶ 7. However, Yates provides no authority for this claim, and it is clearly untenable.

In a further attempt to undermine the validity of Vest's request, Army asserts that Vest's attorney, Mr. Lesar "could not identify the information listed above with any specificity. He did not know the first, middle or last name of the person for whom he was requesting records. He could not state the date or location of birth." Id., ¶ 9. Here, Yates simply makes up facts out of whole cloth. Vest's

request provides Morrison's first, middle and last names, and two possible dates of birth and birthplaces.

Yates also belittles the request for having provided information that the subject of the request had been assigned a service number beginning with the letters "AF," which she dismisses as "indicating  that the individual was a member of the Air Force, not the Army." Id.  Apparently, she never considered the possibility that Morrison was both in the Air Force and in the Army.  Yet this is what his NPRC file establishes beyond question.  In addition, Yates ignored the information Vest provided indicating that Morrison had enlisted in the Army, which clearly provided a basis for searching Army records.  And the implicit assertion that Army has no records referring to its personnel who once served in the Air Force is untenable.

Yates also seeks to discredit bona fides of Vest's request by stating that "[t]o add to the confusion, Mr. Lesar's request referred to FBI records and an immigration violation, records which generally are not maintained by the Army." Id., ¶ 10.  But whether this was "generally" the case or not, the fact is that this was important information for identification and search purposes.  And, as noted above, the information in the NPRC file on Morrison in fact contains Army records relating to his immigration status.

Additionally, the issue is not whether the Army "generally" maintains INS and FBI records in its files but whether Vest's request reasonably described the records and thus required a search. It did.

### Central Intelligence Agency

By letter dated December 24, 2008, Vest submitted a detailed request to the CIA for records pertain to James L. Casey. Complaint, Exh. 55. By letter dated December 29, 2008, he submitted a similarly detailed request for records pertaining to Robert Morrison. Id., Exh. 19. The primary difference between the two requests was that with respect to Casey, Vest submitted an official certificate of death, whereas with respect to Morrison he lacked such definitive proof.

The CIA acknowledged the Casey request by letter dated December 22, 2008. Id., Exh. 56. It asserted that it needed "additional identifying information before we can effectively search our files for information on an individual." Id. It demanded that Vest provide Casey's "full name, place of birth and, and citizenship status." Id. Nowhere in this letter did the CIA claim that Vest had not reasonably described the records sought. The most the CIA has done, as explained in the supporting declaration of Delores M. Nelson, is to claim that without additional information it "may be unable to distinguish between individuals with the same or similar names." Declaration of Delores M. Nelson, ¶ 8. Of course, without doing

a search, it won't know. So this is sheer speculation and does nothing to undermine the reasonableness of the request as submitted.

In its January 23, 2009 response to the request for records on Morrison, the CIA essentially repeated the same claim that it had made regarding Casey, that it could not "effectively search" for information on an individual unless it had "as much identifying information as possible." Id., Exh. 23. Again, there was no claim that Vest's request for records on Morrison did not reasonably describe the records sought.

In addition to demanding more identifying information, the CIA's January 23rd letter also stated that it needed proof of death or a privacy authorization. Yet its supporting affidavit concedes that "'[w]e can search without this authorization. . . .'" Defendants' MSJ, Exhibit C, Declaration of Delores M. Nelson, ¶ 10. This contradicts the claim that the submitted request did not reasonably describe the materials sought.

Defense Intelligence Agency

By letter dated December 29, 2008, Vest submitted a request to the DIA for records pertaining to Morrison. The content of the request was the same as that submitted to the Air Force and other defendants discussed in this section. See Complaint, Exh. 10. By letter dated April 6, 2009, the DIA responded with a terse

letter saying that "the subject of your request does not fall under the purview of this agency." Id., Exh. 11.

Exhibit D to defendants' MD/SJ, the Declaration of Alesia Y. Williams, elaborates on this only to say that it determined that the request "did not fall under the purview of DIA because DIA was not in existence during the timeframe of the requested information." Williams Decl., ¶ 6. The request did not place any limits on the timeframe covered by the request. DIA also presumes, without any factual basis therefore being established, that records generated subsequent to the creation of DIA could not be maintained or referenced in subsequently created records maintained by DIA. There is, therefore, simply no basis for the claim that the request did not reasonably describe the records sought.

Navy

By letter dated December 29, 2008, Vest submitted a request to the Department of the Navy for records on Morrison. See Complaint, Exh. 6. By letter dated January 13, 2008, Navy stated that it was unable to process Vest's request because it "does not identify any affiliation between the Navy and Morrison. Id, Exh. 8. Navy added that "the military records of service members who are retired, deceased, or otherwise separated prior to 1996 are not maintained by the Navy." Id.

The Declaration of Miriam Brown-Lam states that she determined that without information indicating Morrison's affiliation with the Navy "it would not be possible to search for and locate records responsive to the request with reasonable effort." Brown-Lam Decl., ¶ 3. But Brown-Lam adduces no supporting facts for this conclusory assertion. She does not explain why a search could not be conducted of various records systems simply based on name alone or on a name coupled with an assumption that particular records systems should be searched. The fact that "the military records of service members who are retired, deceased, or otherwise separated prior to 1996 are not maintained by the Navy" does not, of course, eliminate the possibility that a search conducted under Morrison's name might locate responsive records that fall outside this excluded group of records.

Like any agency, Navy has records that are maintained in Privacy Act systems of records. By definition, information from such systems is retrievable by name. Navy does not explain why such systems should not be searched under Morrison's name.

Brown-Lam's statement may be intended to raise a claim that it would be unduly burdensome to conduct any search under Morrison's name. However, she makes no showing of burdensomeness. No information is provided, for example, on the number of possible searches or the time that they would take. Thus, Navy's

claim that the request does not reasonably describe the records sought cannot be sustained.

### Marine Corps

By letter dated December 29, 2008, Vest submitted his standard request for records on Morrison to the Marine Corps. Id., Exh. 7. By letter dated January 26, 2009, the Marine Corps stated that its records management is not centralized but is delegated to "to those officials that create and/or maintain records. Noting that Vest had indicated that Morrison had enlisted in the Army and that he had not shown Morrison had any affiliation with the Marine Corps, the Marine Corps said that it was referring the request to the Army. Id., Exh. 9.

The Marine Corps failed to state that a professional agency employee familiar with knowledge of the subject area would be unable to locate the records sought with a "reasonable amount of effort." The fact that there is no centralized index is irrelevant unless it is shown that there are so many potentially responsive records systems that any attempt to search them would be unduly burdensome. In view of the fact that the Marine Corps, like other agencies, undoubtedly maintains records under the Privacy Act which are required to be retrievable by personal identifiers, this claim is not sustainable. The Marine Corps undoubtedly also maintains computerized indices. This greatly reduces the possibility that searches focused on a particular person will be burdensome. See, e.g., Yeagher v. DEA,

678 F.2d 315, 322, 326 (D.C. Cir. 1982) (holding request encompassing over

1,000,000c computerized records to be valid because "[th]e linchpin inquiry is

whether the agency is able to determine 'precisely what records [are] being

requested'").

### Department of State

By letter dated December 29, 2008, Vest submitted a request to the

Department of State for records on Morrison. The request provided Morrison's

alternative birthdates and birth places. It specifically requested a search of records

maintained at U.S. embassies or associated posts in Canada, England, France,

Germany, Belgium, and Mexico. Id., Exh. 15. By letter dated March 6, 2009,

State responded. Id., Exh. 16. Although State's letter nowhere states that Vest's

request failed to reasonably describe the records or sought records which a

professional employee of the agency would be unable to locate with a reasonable

effort, State nonetheless closed the request and advised Vest that if he wished to

pursue his request he should submit a new request with the additional information

State had requested.

The Declaration of Margaret P. Grafeld submitted on behalf of defendants'

motion for summary judgment fails to assert that the request does not reasonably

describe the records sought or that a professional employee with knowledge of the

subject matter would be unable to locate the records sought with a reasonable amount of effort.

## C. The Claims of Some Defendants That Vest's Request Violates Their Regulations Is Either in Error or the Regulations Are Invalid

Some of the defendants cite various regulations which they claim support their contentions that Vest did not reasonably describe his request or violated a requirement that a privacy authorization be provided for the third party subject of the request or failed to pay or make a commitment to pay fees. These contentions are either in error or based on invalid regulations.

The Army cites 32 C.F.R. §505.7(a)(1) for the proposition that it is prohibited from disclosing any information without receiving a written consent of the subject of the records. However, it failed to cite the full text of this provision, which provides, inter alia, that "[i]f the FOIA requires the release of information, the information must be released. The Privacy Act cannot prevent release to a third party if the FOIA requires release." Thus, until the Army has made an evidentiary show that it is entitled to an exemption claim, it cannot insist upon a privacy authorization a prerequisite to disclosure. Having not even searched for the records at issue here, much less reviewed their exemption status, its motion for dismissal cannot be sustained.

Additionally, it must be noted that, 32 C.F.R. §505.7(a)(2) provides a whole

raft of information regarding military and civilian personnel which must be

disclosed, such as

--Rank, date of rank, active duty entry date, basic pay entry date, and gross pay (including base pay, special pay, and all allowances except Basic Allowance for Housing);

--Present and past duty assignments, future stateside assignments;

--Office/unit name, duties address and telephone number (DOD policy may require withholding of this information in certain circumstances);

--Source of commission, promotion sequence number, military awards and decorations, and professional military education;

-- Duty status, at any given time;

--Separation or retirement dates;

--Military occupational specialty (MOS);

Thus, Vest's request mandated the Army to search for, and release, informa-

tion pertaining to Morrison pursuant to 32 C.F.R. §505.7(a)(2) without his consent.

The Navy cites 32 C.F.R.§ 701.8(b) to show that it is prohibited from

disclosing any information without receiving a written consent of the subject of the

records. But this provision is not mandatory. It says that when a request for

personally identifiable information in a record is made, "the request may require a

notarized signature or a statement . . . under penalty of perjury" giving the

authorization of the subject of the request for release of the information. Id.

(emphasis added).

To the extent that the Navy contends that a privacy authorization is
mandatory, its regulation would violate the FOIA. Indeed, the Privacy Act itself
provides that "no agency shall rely on any exemption in this section to withhold
from an individual any record which is otherwise accessible to such individual
under the provisions of section 552 of [the FOIA] . . . ." 5 U.S.C. 552a(t)(2).
Thus, agencies must make their records promptly available to any person who
makes a proper request for them unless the agency establishes that the information
is appropriately withheld under one or more of the nine exemptions set forth in 5
U.S.C. § 552(a)-(b). Roth v. United States DOJ, 2009 U.S. Dist. LEXIS 87206
(D.D.C. Sept. 23, 2009).

Accordingly, there is no basis for the Navy to require a privacy authorization
before it has conducted a search and evaluated the exemption status of the records
found.

The DHS cites 6 C.F.R.§ 5.2 1 (f) to show that it is prohibited from dis-
closing any information to Vest in response to his request to the U.S. Citizenship
and Immigration Service (CNIS) for records on Morrison without receiving a
written consent of the subject of the records. This regulation states in part that the
requester "must . . . provide a statement from the [subject of the request] certifying

the individual's agreement that records concerning the individual may be released to you."

To the extent that this regulation bars CINS from accepting and processing a FOIA request for third party records, it is an invalid regulation which is inconsistent with both the FOIA and the Privacy Act. This Court should strike it as an invalid regulation.

CNIS has in any event waived any application of this regulation by processing the request for records on Morrison submitted by another requester. See Exhibit 28.

The core issue of whether an agency may refuse to process a request for third party information because a privacy waiver has not been provided was decided by this Court long ago in Grove v. C.I.A., 752 F.Supp. 28 (D.D.C.1990). In that case the defendants took the position that "information regarding individuals for whom plaintiff has not provided release authorizations could not be produced." Id., at 30. This Court held that "it is clear that the Privacy Act is not to be used "as a barrier to FOIA access." Id., quoting Greentree v. United States Customs Serv., 674 F.2d 74, 79 (D.C.Cir. 1982). It noted that under the Privacy Act, 5 U.S.C. § 552(a)(t)(2), "[no agency shall rely on any exemption in this section to withhold from an individual any record which is otherwise accessible under the provisions of section 552 of [the FOIA]." Id.   Under the law, the

burden is on the agency to prove entitlement to an exemption. See 5. U.S.C. §
552(b); Sims v. CIA, 642 F.2d 562, 567-68 (D.C.Cir.1980. Any regulation
requiring procedures which contradict this basic require of the FOIA law is invalid.
The State Department relies upon 22 C.F.R. § 171.12(a) to show that it is
prohibited from disclosing any information without receiving a written consent of
the subject of the records and a proof of his/her death. Its regulation clearly
requires this. However, for the reasons set forth above in discussing the DHS
regulation regarding CNIS records, this regulation is clearly invalid as it violates
basic FOIA law. See, e.g., Grove, infra, and discussion thereof at pages 44-45.
The Air Force refers in passing to 32 C.F.R. § 806.29(c)(2)(iv), see Defs' MSJ at
27, in an effort to show that Vest's request did not comply with administrative
exhaustion requirements. However, the cited regulation does not show this. The
regulation does not provide that a requester is barred from having his request
processed because it did not reasonably describe the records sought. All it says is
that where the Air Force does not think the request has sufficiently described the
records sought, the initial notification letter may, "[i]f possible, help the requester
identify the requested records by explaining what kind of information would make
searching for responsive records easier." Thus, all that the additional information,
requested by the Air Force would accomplish would be to make searching for the
records easier, but not impossible.

In addition, as noted above, the Air Force waived any objections to Vest's requests based on whether or not it reasonably describe the records sought because it subsequently processing it anyway. Finally, some defendants contend that Vest failed to comply with regulations requiring that a requester pay or commit to paying search fees and copying costs. See Defs' MSJ at 28. However, such regulations are invalid to the extent that they violate the FOIA's express statutory provision that a requester is entitled to two free hours of search time and 100 free pages of records. See U.S.C. § 552(a)(4)(A)(iv)(II). Until these costs have been incurred, or unless the agency reasonably estimates that greater fees will be incurred, the agency cannot refuse to process the request. Any regulations to the contrary are invalid.

That having been said, Vest will of course commit to pay any reasonable estimate of costs beyond the two hours, 100 free pages proviso. He has, however, been provided with no such estimates.

## III. DEFENDANT DOD IS NOT ENTITLED TO HAVE PLAINTIFF'S CLAIM AGAINST IT DISMISSED

Vest submitted a pro se request for records on himself to the DSS, a Department of Defense Component. Although Vest has lost his copy of this request, DSS acknowledged it in an undated letter sent by the Chief of its Privacy Act Branch. See Complaint, Exh. 57, who claimed that a search had been made

but no records were located. Vest was not notified of his right to appeal this decision. Id. Subsequently, Vest's counsel submitted a new request for a copy of the original request which Vest has lost. DSS has not responded to this request.

Vest has exhausted his administrative remedies with respect to the first request because DSS did not notify him of his right to appeal. He has exhausted his remedies with respect to the second request because the time for responding to it has elapse and no response has been made. Accordingly, Vest has stated a claim upon which relief can be granted and his action thus cannot be dismissed.

Although DSS claims to have made a search for records and found none, it is not moved for summary judgment on this basis, nor has it put forward any affidavit in support of such a claim. Therefore, summary judgment is also not appropriate.

## IV. DEFENDANTS HAVE FAILED TO SUSTAIN THEIR BURDEN OF PROVING THAT THEY HAVE CONDUCTED AN ADEQUATE SEARCH

### A. Legal Standard Governing Searches

In order to prevail in a Freedom of Information Act ("FOIA") case, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." National Cable Television Ass'n v. FCC, 479 F.2d 183, 186 (D.C.Cir.1973). Agency affidavits regarding the search for

responsive records are inadequate to support summary judgment where they "do not note which files were searched or by whom, do not reflect any systematic document location, and do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized." Weisberg v. United States Dept. of Justice, 627 F.2d 365, 371 (D.C.Cir.1980).

When the adequacy of the agency's search is in dispute, summary judgment is inappropriate as to that issue. See Founding Church of Scientology, Inc. v. Nat. Sec. Agency, 610 F.2d 834, 836-37 (D.C.Cir.1979)("To accept its claim of inability to retrieve the requested documents in the circumstances presented is to raise the specter of easy circumvention of the [FOIA] . . . and if, in the face of well-defined requests and positive indications of overlooked materials, an agency can so easily avoid adversary scrutiny of its search techniques, the Act will inevitably become nugatory.").

It is a truism that the issue is not whether the documents might exist that are responsive to the request, but rather whether the search conducted by the agency was "adequate." Weisberg v. Department of Justice, 745 F.2d 1476, 1485 (D.C.Cir. 1984) emphasis in the original); Meeropol v. Meese, 790 F.2d 942, 956 (D.C.Cir. 1986)("]A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request."). In

Truitt v. Department of State, 897 F.2d 540,542 (D.C.Cir.1990), the Court of

Appeals expatiated on this standard, stating that

> It is elementary that an agency responding to a FOIA request
> must "conduct a search reasonably calculated to uncover all relevant
> documents", and if challenged, must demonstrate "beyond a material
> doubt" that the search was reasonable. "'The issue is not whether any
> further documents might conceivably exist but rather whether the
> government's search for responsive documents was adequate.' The
> adequacy of an agency's search is measured by a 'standard of
> reasonableness' and is 'dependant upon the circumstances of the
> case.'"

Id. at 642 (footnotes omitted)(emphasis added). If such doubt exists as to the

adequacy of the search, Truitt counsels, "summary judgment for the agency is not

proper." Id. (footnote omitted). Where the sufficiency of the agency's

identification or retrieval procedure is genuinely an issue, summary judgment is

not in order[,] Founding Churach, supra, 610 F.2d at 836, and the plaintiff is

entitled to take discovery on the adequacy of the search. Weisberg, supra, 627

F.2d at 371.

### B. Defendants Air Force, DIA, DOJ, and DSS Are Not Entitled to Summary Judgment on the Search Issue

Defendants Air Force, DIA, DOJ, and DSS claim they are entitled to

summary judgment on the search issue. They are not.

### Air Force

The Air Force contends that it has conducted an adequate search for records

on Morrison. It states that the Air Force Office of Special Investigations

("AFOSI ") conducted an electronic search of the Defense Central Index of

Investigations ("DCII") database, as well as "physical and electronic searches of

the files in the Office of Special Projects." Price Decl., ¶ 7. Additionally, Air

Force says that the Air Force Personnel Center ("AFPC") conducted "a similar

broad search through the Air Force's worldwide locator and the Automated

Records Management System office, searching the Military Personnel Data

System, the Defense Eligibility Enrollment Reporting System, ARMS, and the

NARA database." Defs' MSJ at 35, citing id.

The Air Force initially refused to conduct a search in response to Vest's

request, claiming that it had no central index. See Complaint, Exh. 3. This raises

questions as to what other indices might be relevant to Vest's request, which are

they, how they are indexed, what do they cover, and so forth. While the Air Force

has now specified several indices that it searched, it has not certified that these are

all the indices that may contain relevant records. Additionally, the Air Force's

assertion that it found no records responsive to the request in the locations it did

search (other than NARA'S NPRC file) is in considerable tension with the records

located at the NPRC. It does not seem credible that the considerable volume of

records and activities reflected in the NPRC file have disappeared without a trace

from the other locations Air Force is said to have searched.

Although Air Force does state that it searched under the variants of Morrison's name and aliases given in Vest's request, it fails to state that it searched under logical variants of these names, including spelling variants. Thus, it does not indicated that it searched under Morrison's name using a middle initial rather than a full middle name, nor does it indicate that spelling variants such as "Morrisen" or "Morisen" or "Morison" were employed. This is particularly important with electronic searches, where a single different digit can result in a "no hit" response.

The Air Force does not indicate the chronological span of the records systems searched or whether "archival" records are in a separate system. Nor does it indicate how the records in each system are indexed and retrieved. For example, are records in the Office of Special Projects indexed according to name or Air Force unit or by project or some other method?

Finally, it should be noted that the Declaration of Alesia Y. Williams submitted by the DIA, states that prior to 1965, the "individual military services ran their own attaché programs." Defs' MSJ, Exhibit D, Williams Decl., ¶ 7. While some records pertaining to Morrison's service with the military attache's office in London, England are contained in his NPRC file, there is no assurance that this represents all such records. A search to ascertain whether other such records exist must be made.

Because a material doubt exists as to the adequacy of Air Force's search, its motion for summary judgment must be denied.

DIA

Responding to additional information provided to the FBI which was included in Vest's complaint but not previously provided to the DIA, the DIA conducted a search "two primary databases, WISE and ISM, USING Boolean searches with wild cards and key words encompassing 14 different variations on Mr. Morrison's name and aliases provided by Plaintiff. Wiliams Decl., ¶ 7. It located no records.

While DIA's use of Morrison's names and aliases and variations thereof was definitely superior to that conducted by Air Force, it was still deficient. For example, the names searched lacked the following obvious variations of the name: "R. Morrison, Morrison R, R.B. Morrison, Morrison R.B., E. Morrison, Morrison E., E.C. Morrison, Morrison, E.C., W. F. West, West, W.F., W. West, West, W." And, as noted above with respect to the Air Force, there are no spelling variations of Morrison's last name. For these reasons, DIA's search was deficient.

FBI

With respect to the Vest's requests for records on Rees, an issue as to the adequacy of the FBI's searches is raised with respect to its search for electronic surveillance ("ELSUR") records. This issue arises because the FBI states

unequivocally that the manual form of the ELSUR indices dates to January 1,

1960, and electronic or automated indices to October 9, 1991. See Defs' MSJ,

Exhibit H, Declaration of David M. Hardy, ¶ 29. The issue is how were electronic

records stored and how were they located prior to the creation of the manual

ELSUR indices? Some system for retrieving them must have existed. What was it

and how did it work?

Absent a credible explanation from the FBI, which so far has not been

provided, discovery on this issue should be allowed.

## V. THE FBI AND CIA ARE NOT ENTITLED TO SUMMARY JUDGMENT

The FBI and the CIA have moved for summary judgment on the grounds

that any records responsive to the requests on Morrison—and in the case of the

CIA, Casey—are exempt pursuant to Exemptions 6 and 7(C). However, this claim

cannot be sustained.[2]

These defendants have refused to process these requests because Vest did

not provide either proof of death or a privacy waiver for the third parties who were

the subjects of the requests. This issue was decided by this Court in Grove v.

C.I.A., 752 F.Supp. 28 (D.D.C.1990). In that case the defendants took the position

---

[2] With respect to Vest's request for records on Morrison, the FBI has returned the requests he directed to it, its field offices and Legats. This is an outrageous violation of Vest's rights under the FOIA, effectively denying him his right to have his request received, to have his request processed promptly on a first-in first-out basis, to preserve his right of appeal, and so forth. This Court must reinstate these requests and direct that they be processed promptly.

that "information regarding individuals for whom plaintiff has not provided release

authorizations could not be produced." Id., at 30.

> This Court asserted that it

>> can only assumed that "the agencies which require
>> release authorizations do so as a matter of course,
>> pursuant to the Privacy Act. However, it is clear
>> that the Privacy Act is not to be used "as a barrier
>> to FOIA access."

Id., quoting Greentree v. United States Customs Serv., 674 F.2d 74, 79 (D.C.Cir.

1982). The court noted that under the Privacy Act, 5 U.S.C. § 552(a)(t)(2), "[no

agency shall rely on any exemption in this section to withhold from an individual

any record which is otherwise accessible  under the provisions of section 552 of

[the FOIA]." Id.

As Grove further pointed out, "the burden is on the agency to prove that the

requested information is exempt from FOIA disclosure." Id., citing Sims v. CIA,

642 F.2d 562, 567-68 (D.C.Cir.1980).  It found that some of the defendants had

either failed to claim legal exemptions under the FOIA or had failed to provide

support for a claim that an exemption would apply. Id.

The latter is the case here. While the FBI claims that Exemption 6 and 7(C)

apply as a categorical matter to any potentially responsive records, this contention

is founded on speculation and bad law. Until any responsive documents have been

located and reviewed, there is no basis for balancing the public interest in

disclosure against the privacy interests at stake, thus a determination as to whether
a privacy-based exemption applies cannot be made.

This is further supported by the ruling in Davis v. Department of Justice, 460
F.3d 92, 92 (D.C.Cir.2006), in which the Court of Appeals held that "'without
confirmation that the Government took certain basic steps to ascertain whether an
individual was dead or alive, we are unable to say whether the Government
reasonably balanced the interests in personal privacy against the public interest in
release of the information at issue.'" Id., quoting Schrecker v. U.S. Dept. of
Justice, 254 F.3d 162, 167 (D.C.Cir.2001). Neither the FBI nor the CIA has
asserted that they have taken reasonable steps to ascertain whether Morrison and
Casey are deceased. Until they have done so, it is not possible to balance the
privacy interest against the public interest in disclosure, thus no exemption claim
can be sustained.

Additionally, with respect to the Exemption 7(C) claim asserted by both the
FBI and the CIA, a further problem exists. Exemption 7(C) requires as a threshold
matter that an agency invoking it show that the records in question were "compiled
for law enforcement purposes." This cannot be done until the records involved
have been actually examined and analysed. See, e.g., Campbell v. U.S. Dept. of
Justice, 164 F.3d. 20, 31-33 (D.C.Cir.1993).

## VI. DEFENDANT DHS ("CNIS") MUST FILE A VAUGHN INDEX

As noted above the U.S. Immigration and Citizenship Service has waived its right to contend that Vest did not exhaust his administrative remedies by not providing a privacy authorization for records on Morrison because it processed the request of another person for the same records. See Exhibit 28.

That response, which acknowledged that CNIS has 302 responsive pages, withheld all but four of those pages under various exemption claims. Vest is entitled to have DHS file a Vaughn justifying the withholding of these records. Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir.1973). This Court must direct DHS to provide such an index forthwith.

### CONCLUSION

For the reasons set forth above, plaintiff's cross-motion for summary judgment should be granted and defendants' motion to dismiss or for summary judgment should be denied.

Respectfully submitted,

/s/ James H. Lesar

James H. Lesar #114413
1003 K Street, N.W.
Suite 640
Washington, D.C. 20001
Phone: (202) 393-1921


_____/s/_____

Julia Vorsina Greenberg
New York Bar #388561773
160 Broadway
New York, N.Y. 10038
Phone: (212) 965-9514

Counsel for Plaintiff


DATED: November 3, 2009