**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

)
HERB D. VEST,                                    )
                                                )
                    Plaintiff,                  )
                                                )
          v.                                    )          Civil Action No. 09-1083 (RBW)
                                                )
DEPARTMENT OF THE AIR FORCE,                    )
et. al.,                                        )
                    Defendants.                 )

---

## MEMORANDUM OPINION

Herb Vest, the plaintiff, brings this action under the Freedom of Information Act

("FOIA"), 5 U.S.C. § 552 (2006), against various defendants "to obtain records regarding

persons he believes may figure in some of the mysterious circumstances concerning his father's

death in Texas in 1946."  First Complaint for Injunctive Relief ("Compl.") ¶ 1.  The plaintiff also

brings a claim under the Privacy Act, 5 U.S.C. § 552a (2006), against one of the defendants for

records pertaining to himself.  Compl. ¶ 1.  Currently before this Court are the Defendants'

Motion to Dismiss and for Summary Judgment and the Plaintiff's Cross-Motion for Summary

Judgment.[1]  After careful consideration of the parties' submissions and the applicable legal

---

[1]  The following additional papers were submitted by the parties in conjunction with these motions and considered
by the Court:  (1) the Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss and for
Summary Judgment ("Defs.' Mem."); (2) the Defendants' Statement of Material Facts Not in Genuine Dispute; (3)
the plaintiff's Memorandum of Point and Authorities [in] Support of Plaintiff's Cross-Motion for Summary
Judgment and In Opposition to Defendants' Motion to Dismiss or For Summary Judgment ("Pl.'s Mem."); (4) the
plaintiff's Statement of Material Facts Not in Genuine Dispute; (5) the Defendants' Reply in Support of Their
Motion to Dismiss and For Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment
("Defs.' Reply"); and (6) the plaintiff's Reply to Defendants' Opposition to Plaintiff's Cross-Motion for Summary
Judgment ("Pl.'s Reply").

principles, the Court will deny the plaintiff's motion for summary judgment, grant the motion to dismiss with respect to some of the defendants, and grant summary judgment to the remaining defendants, as they have demonstrated one of the following: the plaintiff has either failed to exhaust his administrative remedies, the searches they conducted were adequate, or they have properly asserted exemptions under the FOIA.

## I. BACKGROUND

Herb Vest is a United States citizen who on various occasions filed FOIA requests with various government agencies concerning a number of individuals, including himself. Specifically, the plaintiff filed FOIA requests with the following agencies: (1) the United States Department of the Air Force ("Air Force"); (2) the United States Department of the Army ("Army"); (3) the United States Department of the Navy ("Navy"); (4) the United States Marine Corps ("Marine Corps"); (5) the United States Defense Intelligence Agency ("DIA"); (6) the United States Department of State; (7) the United States Department of Homeland Security, Citizenship and Immigration Services ("DHS/CIS"); (8) the United States Central Intelligence Agency ("CIA"); (9) the United States Department of Justice, Federal Bureau of Investigation ("DOJ/FBI"); (10) the United States Department of Defense, Defense Security Service ("DOD/DSS");[2] (11) the United States National Security Agency ("NSA");[3] and (12) the United

---

[2] On an unknown date, the plaintiff submitted, pro se, a letter to the DOD/DSS for records concerning himself. Compl. ¶ 73. However, he has since withdrawn this request, Pl.'s Reply at 22, rendering this claim moot. Therefore, the Court will dismiss the claim against the DOD/DSS.

[3] The plaintiff submitted a written request, through counsel, to the NSA dated December 29, 2008, for records pertaining to Mr. Robert Bryant Morrison. Compl. ¶ 32; id., Exhibit 12 (Letter to the NSA) at 1. However, the plaintiff has since withdrawn the request, Pl.'s Reply at 26, also rendering this claim moot. Therefore, the Court will dismiss the plaintiff's claim against the NSA.

States Department of Veteran Affairs ("VA").[4]  Compl. ¶¶ 1-12.  The Court will discuss each request in turn.

A.        The Air Force Request

The plaintiff submitted a written request (the "Morrison request"), through his attorney, to the Air Force dated December 29, 2008, seeking "all records on or pertaining to Mr. Robert Bryant Morrison ["Morrison"], also known as Egbert Clair Morrison, Wayne West and Wayne Forest Wayne, wherever they may be filed or located at . . . your agency or in its repositories, and in whatever form or format they may be maintained."  Id. ¶ 14, Exhibit ("Ex.") 1 (Letter to the Air Force) at 1.[5]  The request did not indicate whether Morrison was a member of the plaintiff's family, and if so, what the relationship was, or otherwise provide the basis underlying the request for information concerning Morrison.  Id.  The Air Force responded with a letter dated January 24, 2009, "advis[ing the plaintiff] that it did not have any central index for individuals by name," that his "request indicated a misunderstanding of the FOIA," and as a result "it was closing the request."  Id. ¶ 16.  Additionally, the Air Force informed the plaintiff that because his request pertained to an individual that he indicated was affiliated with the Army, the search for the requested records could be more fruitful if he submitted it to the Army.  Defs.' Mem., Ex. A (Declaration of Carolyn Price ("Price Decl.")) ¶ 6.

_____

[4] The claim against the VA was brought pursuant to the Privacy Act.  Compl. ¶ 1.  However, the plaintiff has since conceded this claim, admitting that he fails to state a claim against the VA.  Pl.'s Cross Motion For Summary Judgment at 1 n.1.  Therefore, the Court will dismiss this claim.

[5] The Court refers to the page numbers of the exhibits as assigned by the electronic case filing system.

In any event, after sending its January 24, 2009 letter, the Air Force conducted a second search for responsive records. On July 13, 2009, it referred the plaintiff's request to the Air Force Office of Special Investigations ("AFOSI"), the Air Force Personnel Center ("AFPC"), the Army,[6] and on August 4, 2009, to the National Personnel Records Center ("NPRC"). Defs.' Mem., Ex. A (Price Decl.) ¶¶ 7-12. As explained in greater detail infra in section III of this opinion, these agencies conducted searches and, for the most part, did not locate any responsive documents. Like the complaint lodged against these other agencies, the plaintiff contends that the Air Force "did not advise [him] of his right to appeal its determination." Compl. ¶ 17.

B.     The Army Request

Also on December 29, 2008, through his attorney, the plaintiff submitted the Morrison request to the Army. Compl. ¶ 21. The Army responded with a letter dated January 14, 2009, informing the plaintiff that he "was required to provide a description of the desired record that [will] enable[] the Government to locate the record with a reasonable amount of effort." Id. ¶ 22 (internal quotation marks omitted). The Army's letter further stated that "a signed release, a court order, or proof of death" was needed before any third-party information could be released. Id., Ex. 5 (Letter from the Army) at 1. There is no indication in the Complaint that the plaintiff complied with this request or took any further action. Nevertheless, the plaintiff asserts that the Army "did not advise [him] of his right to appeal." Id. ¶ 23.

---

[6] The Air Force has stated that it is unaware of the status of the plaintiff's request since it referred it to the Army. Defs.' Mem., Ex. A (Price Decl.) ¶ 10. The Air Force explains that "[n]ormally the Department of the Army responds directly to the plaintiff and does not keep [the Air Force] informed of its status or results of any search which was referred to [it]." Id.

C.    The Navy Request

The plaintiff submitted the Morrison request, through counsel, to the Navy also on December 29, 2008.  Id. ¶ 25.  The Navy responded with a letter dated January 13, 2009, informing the plaintiff that additional information, specifically Morrison's affiliation with the Navy, was needed before his request could be processed.  Id. ¶ 26, Ex. 8 (Letter from the Navy) at 1.  The letter further stated that military records could not be released "without the signed authorization of the service member whose records are at issue."  Id., Ex. 8 (Letter from the Navy) at 1.  Accordingly, the Navy advised the plaintiff "that it was closing [his] request."  Id. ¶ 26.  There is no indication in the Complaint that the plaintiff complied with the Navy's directions, but again the plaintiff asserts that the Navy "did not advise [him] of his right to appeal [the Navy's] determination."  Id.

D.    The Marine Corps Request

On December 29, 2008, the plaintiff submitted the Morrison request, through counsel, to the Marine Corps.  Id. ¶ 25.  The Marine Corps responded with a letter dated January 26, 2009, informing the plaintiff that it was referring his request to the United States Army Human Resources Command because he "ha[d] indicated that Morrison was enlisted in the Army [and] had not demonstrated any affiliation [Morrison had] with the Marine Corps."  Id. ¶ 27, Ex. 9 (Letter from the Marine Corps) at 1.  Again, there is no indication in the Complaint that the plaintiff took any further action as to this request.  The plaintiff asserts that the Marine Corps "did not advise [him] of his right to appeal its determination."  Id. ¶ 27.

E.    The DIA Request

The plaintiff submitted the Morrison request, through counsel, to the DIA on December 29, 2008.  Id. ¶ 29.  The DIA "determined that the subject of [the plaintiff's] request did not fall under the purview of [the DIA]."  Id. ¶ 30, Ex. 11 (Letter from the DIA) at 1.  As a result of this determination, the DIA advised the plaintiff to submit his request to the NPRC, which "would have cognizance over the records that [he was] requesting."  Id., Ex. 11 (Letter from the DIA) at 1.  Finally, the plaintiff was informed that his request was being closed.  Id. ¶ 30.

Subsequent to the filing of this lawsuit, the DIA reviewed the Complaint and its attachments, and as a result of this review discovered that Morrison had served as a military attaché in England during World War II.  Defs.' Mem., Ex. D (Declaration of Alesia Y. Williams ("Williams Decl.")) ¶ 7.  As explained in more detail later in this opinion, the DIA searched its two primary databases, Web Intelligence Search Engine ("WISE") and InfoSphere Management ("ISM"), using "[b]oolean, key words, and wild cards . . . to conduct the searches."  Id. ¶¶ 9-10.  However, neither search produced any responsive records.  Id. ¶¶ 10-11.

F.    The Department of State Request

The plaintiff submitted the Morrison request, through counsel, to the Department of State on December 29, 2008.  Compl. ¶ 36.  The Department of State responded with a letter dated March 6, 2009, informing the plaintiff that it needed additional information, including an agreement to pay fees associated with his request, third-party authorization for release of the requested information, a specific time frame the request encompassed, a narrowed scope of the request, and "a full description of incidents, meetings, events, persons involved, etc., pertaining to the documents requested" before it could continue processing his request; consequently, the

plaintiff was advised "that [his] request [was now] closed in [its] system. <u>Id.</u>, Ex. 16 (Letter from the Department of State) at 6-7. However, the Department of State advised the plaintiff that if he wished to pursue his request further, he should "send [it] a new request, which [should] include the additional information" that was outlined earlier in the Department of State's letter. <u>Id.</u> at 7. There is no indication in the Complaint that the plaintiff ever provided the additional information or took any further action. However, the plaintiff now asserts that the Department of State should have informed him "of his right to appeal its determination." <u>Id.</u> ¶ 38.

G.      <u>The DHS/CIS Request</u>

On December 29, 2008, the plaintiff submitted the Morrison request, through counsel, to the DHS/CIS. <u>Id.</u> ¶ 40. The DHS/CIS responded with a letter dated January 15, 2009, informing the plaintiff that "[i]n order to continue processing [his] request [he needed to] provide the following information: a Certificate of Identity Form," which had to be signed by the "subject of the request," the "[n]ames of [his] parents[,] . . . [d]ate of [e]ntry, [and] [p]ort of [e]ntry." <u>Id.</u> ¶ 41, Ex. 18 (Letter from the DHS/CIS) at 1-2. Finally, the DHS/CIS advised the plaintiff that failure to comply with its request within 30 days would result in his request being "administratively closed." <u>Id.</u> ¶ 41. Once again, there is no indication in the Complaint that the plaintiff complied with the agency's request or took any further action. However, the plaintiff nonetheless contends that he was not informed "of his right to appeal [the] determination." <u>Id.</u> ¶ 42.

H.     The CIA Request

      1.     Request for Morrison-Related Documents

The plaintiff submitted the Morrison request, through counsel, to the CIA on December 29, 2008. Id. ¶ 44. The CIA responded with a letter dated January 23, 2009, informing the plaintiff that it needed additional identifying information concerning Morrison, namely, a "complete date and place of birth, and citizenship status" before his request could be processed. Id. ¶ 45, Ex. 20 (Letter from the CIA) at 1. He was further advised that without receiving the requested information, the CIA "may be unable to distinguish between individuals with the same or similar names." Id., Ex. 20 (Letter from the CIA) at 1. The CIA's letter also requested proof of Morrison's death, if he was deceased, or a privacy waiver signed by Morrison if he was still alive before it could process the plaintiff's request. Id. There is no indication in the Complaint that the plaintiff complied with this directive or took any further action. However, the plaintiff asserts that "[t]he CIA did not advise [him] of his right to appeal its determination." Id. ¶ 46.

      2.     Request for James L. Casey Related Documents

By letter dated December 4, 2008, the plaintiff also submitted a written request, through counsel, to the CIA for records pertaining to James L. Casey ("Casey"). Defs.' Mem., Ex. C (Declaration of Delores M. Nelson ("Nelson Decl.")), Ex. A (Letter to the CIA regarding the Casey request). It appears that the plaintiff mistakenly used the name "Casey" in paragraph 45 of his Complaint, having actually intended to request information from the CIA regarding Morrison, not Casey. In any event, the CIA responded to the request with a letter dated December 22, 2008, advising the plaintiff "that if it did not receive certain biographic information on Casey within 45 da[ys] from the date of its letter, it would cancel the request."

8

Compl. ¶ 45; see also Defs.' Mem., Ex. C (Nelson Decl.), Ex. B (response from the CIA regarding the Casey request). Once again, there is no indication in the Complaint that the plaintiff provided the requested information or took any further action. However, the plaintiff contends that the CIA did not inform him of his right to appeal its determination. Compl. ¶ 46.

I.      The DOJ/FBI Request

        1.      Request for Morrison-Related Documents

        The plaintiff submitted identical Morrison requests, through counsel, dated December 29, 2008, to the FBI Headquarters and the FBI field offices in Dallas, Texas; Houston, Texas; Detroit, Michigan; El Paso, Texas; and San Antonio, Texas. Id. ¶ 48. He also submitted written requests to the FBI Legal Attachés in Belgium; Canada; London, England; Paris, France; Berlin, Germany; and Mexico City, Mexico. Id. ¶ 49. Upon receipt of the plaintiff's requests, various FBI offices sent the plaintiff letters informing him that his requests were being forwarded to the FBI Headquarters. Id. ¶¶ 52-55. In other letters dated January 8, 2009, February 6, 2009, and March 10, 2009, the FBI Headquarters' requested a privacy waiver or proof of death concerning the subject of the FOIA requests. Id. ¶¶ 50, 57-58. In response to theses requests, the plaintiff, through a letter from his counsel, stated "that [he] was unable to provide either proof of death or a privacy waiver for Morrison." Id. ¶ 56. "Additionally, he stated that if responsive records existed, the FBI must process them unless it could show that the putative privacy interest outweighed the public interest in disclosure." Id. The Complaint alleges no further action on the part of either party. Instead, the plaintiff again asserts that he should have been informed "of his right to appeal." Id. ¶¶ 57-58.

2.    Request for Gilbert Enoch Rees, Jr.-Related Documents

The plaintiff submitted written requests, dated August 18, 2008, to various FBI field offices for records pertaining to Gilbert Enoch Rees, Jr. ("Rees").  Id. ¶ 60.  Initially, on September 3, 2008, the FBI Headquarters advised the plaintiff by letter "that it had conducted a search of its Dallas field office files . . . [,] limited [its search] to main files and ELSUR ["Electronic Surveillance"] indices and located no responsive records."  Id. ¶ 61.  In addition, on September 10, 2008, the plaintiff was also advised that a search of the FBI's main files resulted in a "'no records located' finding."  Id. ¶ 62.  The plaintiff was also advised of his right to appeal.  Id.  Next, the FBI responded to the Rees request with a letter dated October 16, 2008, informing the plaintiff that a search of the "main files in the central records system" of its Houston, Texas; Los Angeles, California; and St. Louis, Missouri field office files failed to locate any "responsive records."  Id. ¶ 64; Defs.' Mem., Ex. H (Declaration of David M. Hardy "Hardy Decl.")) ¶ 36.  The plaintiff was also advised of his right to appeal this determination.  Compl. ¶ 64.

On November 10, 2008, the plaintiff's counsel sent a letter to the FBI regarding the findings reported by the Dallas field office.  Id. ¶ 65.  Specifically, counsel requested an additional search "of all cross-references, including all 'buildups, breakdowns or logical variants of Rees' name.'"  Id.  The FBI then searched the "see" files in its Central Record System ("CRS") and through the use of the terms "mentions" and "overhears" in its Electronic Surveillance indices at the Dallas, Texas; Houston, Texas; Los Angeles, California; and St. Louis, Missouri field offices, which failed to yield any responsive documents.  Id. ¶¶ 65-66.  In a letter dated February 14, 2009, the plaintiff administratively appealed these second search

determinations, as well as the determination by the FBI Headquarters that he must submit

separate requests to individual field offices that he believes may have responsive records.  Id. ¶

67.  On March 11, 2009, the Office of Information and Privacy ("OIP") "acknowledged receipt

of Vest's appeal and assigned it" a case number.  Id. ¶ 68.  On May 4, 2009, the OIP "affirmed

the FBI's decision and stated that the FBI had conducted an adequate, reasonable search for

records responsive to [the p]laintiff's request."  Defs.' Mem. at 16.

The plaintiff, dissatisfied with the responses from the above agencies, filed this lawsuit

on June 11, 2009, to compel the defendants to conduct initial or new searches and to provide all

nonexempt responsive information to him.  Compl. at 19-20.  On September 18, 2009, the

defendants moved for dismissal and for summary judgment, motions which are the subject of

this opinion.

## II. EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER THE FOIA

A.    Legal Framework

Before seeking judicial review under the FOIA, a requester of information is generally

required to exhaust his administrative remedies.  Wilbur v. CIA, 355 F.3d 675, 677 (D.C. Cir.

2004) (per curiam); Pollack v. Dep't of Justice, 49 F.3d 115, 118 (4th Cir. 1995); Oglesby v.

U.S. Dep't of the Army, 920 F.2d 57, 61-62 (D.C. Cir. 1990).  Exhaustion affords "the agency

. . . an opportunity to exercise its discretion and expertise on the matter and to make a factual

record to support its decision."  Wilbur, 355 F.3d at 677 (quoting Oglesby, 920 F.2d at 61)

(internal quotation marks omitted).  Exhaustion under the FOIA is "a jurisprudential doctrine,"

not a "jurisdictional" requirement.  Hidalgo v. FBI, 344 F.3d 1256, 1258 (D.C. Cir. 2003).

Therefore, where a FOIA plaintiff has not exhausted his administrative remedies, dismissal of

the complaint is warranted.  Id. at 1258, 1260; see Wilbur, 355 F.3d at 676 (describing exhaustion as a "mandatory prerequisite to a lawsuit under [the] FOIA").  A FOIA requester has failed to exhaust his administrative remedies when the requester has, inter alia, failed to submit a proper FOIA request to an agency, Latham v. U.S. Dep't of Justice, 658 F. Supp. 2d 155, 159 (D.D.C. 2009), or file an administrative appeal challenging an agency determination, Wilbur, 355 F.3d at 676.

Because resolution of the exhaustion issue will require consideration of "matters outside the pleadings," Fed. R. Civ. P. 12(d), such as the declarations and exhibits submitted in this case, the Court will apply the summary judgment standard under Rule 56.  See Calhoun v. Dep't of Justice, 693 F. Supp. 2d 89, 90-92 (D.D.C. 2010) (Walton, J.) (treating a motion to dismiss under the FOIA as a motion for summary judgment, and then dismissing claim for failure to exhaust administrative remedies), aff'd, No. 10-5125, 2010 WL 4340370 (D.C. Cir. Oct. 19, 2010).  The Court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits or declarations, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits or declarations or documentary evidence to the contrary.  Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

**B.**     The Claims Against the Army, Navy, Marine Corps, Department of State, DHS/CIS, and CIA

The defendants argue that the plaintiff's claims filed against the Army, Navy, Marine Corps, DHS/CIS, Department of State, and CIA should be dismissed because, as to these agencies, the plaintiff did not exhaust his administrative remedies. Defs.' Mem. at 23. Specifically, these agencies adopt some or all of the following arguments in support of their exhaustion arguments: (1) the plaintiff failed to reasonably describe the records being sought; (2) he failed to submit third-party authorization for the release of the requested documents; (3) he failed to pay the fees associated with complying with the request; and (4) he failed to file an administrative appeal of the responses he received from the agencies. See id. at 25-33. For his part, the plaintiff claims that his requests provided reasonable descriptions of the records being sought, that the agencies' regulations are neither enforceable nor valid, and that he was never advised of his right to file administrative appeals of the agencies' decisions. Pl.'s Mem. at 18, 20, 32. The Court will examine the arguments as to each agency in turn.

1.     The Army

The Army has submitted a declaration stating that the information provided by the plaintiff "lacked the necessary specificity as required by 5 U.S.C. §[ ]552." Defs.' Mem., Ex. B (Declaration of Geraldine V. Yates ("Yates Decl.")) ¶ 8. More specifically, the Army contends that the plaintiff did not reasonably describe the records being requested because he did "not identify" the "correct name, place of birth, social security number, service number, . . . a discharge date, whether the individual was an officer or enlisted member, and the branch of service." Id. ¶¶ 8-9. The Army asserts that "[p]resented with [the p]laintiff's facially invalid FOIA request[] [it] properly responded to [the p]laintiff in accordance with [its] FOIA

regulations," Defs.' Mem. at 26, explaining in a letter sent to the plaintiff "why the description he provided in his initial request was insufficient" and why "additional information [was needed] so that [it] could devise an appropriate search." Id. at 26-27. As explained by the Army, the letter sent to the plaintiff requesting additional information "was not issued as a denial of [the] request," id., Ex. B (Yates Decl.) ¶ 14, but instead was an attempt to acquire "a sufficient description necessary to locate . . . specific documents" so that the plaintiff's FOIA request could be properly processed, id. ¶ 11. Thus, because there was no denial, the Army contends that the plaintiff's argument that he should have been informed of his right to appeal is without merit; indeed, the defendant posits that the plaintiff's request was not processed because it was inadequate, as it lacked necessary information. The Court agrees. See Ramstack v. Dep't of Army, 607 F. Supp. 2d 94, 102 (D.D.C. 2009) ("[O]nly a valid FOIA request can trigger an agency's FOIA obligations, and . . . 'failure to file a perfected [FOIA] request . . . constitutes failure to exhaust administrative remedies'"); Dale v. IRS, 238 F. Supp. 2d 99, 103 (D.D.C. 2002) (stating that "failure to file a perfected request [] constitutes failure to exhaust administrative remedies"); Nurse v. Sec'y of Air Force, 231 F. Supp. 2d 323, 329 (D.D.C. 2002) (Walton, J.) (noting that the obligation to disclose records under the FOIA is triggered by the "linchpin inquiry of whether the agency is able to determine precisely what records are being requested") (citation and internal alteration omitted). Accordingly, summary judgment is granted to the Army because the plaintiff failed to exhaust his administrative remedies.

2. The Navy

According to the declaration submitted by the Navy, the request the plaintiff submitted to it "identified no connection whatsoever between the U.S. Navy and the individual about whom

he sought information."  Defs.' Mem., Ex. E (Declaration of Miriam Brown-Lam ("Brown-Lam Decl.")) ¶ 3.  The Navy therefore informed the plaintiff "by letter, dated January 13, 2009, that additional information was necessary before [it] could conduct a search."  Id.  The Navy also points out that the plaintiff's request "did not include a written authorization for the release of personal information, and failed to indicate whether [he] was willing to pay fees or was requesting a waiver of fees."  Id. ¶ 6 (citing 32 C.F.R. § 701.8(a)-(d)).  The plaintiff calls the Navy's representations "conclusory," and posits that the agency should be able to conduct a search based on the "name alone or on a name coupled with an assumption that particular records systems should be searched."  Pl.'s Mem. at 29.

For reasons similar to those that were the bases for its resolution of claims asserted against the Army, the Court finds that the plaintiff has also failed exhaust his administrative remedies with respect to the Navy.  The Navy's declaration states that without information regarding Morrison's affiliation with the Navy, it would not have been possible to search for and locate the records requested with reasonable effort.  See Defs.' Mem., Ex. E (Brown-Lam Decl.) ¶ 3.[7]  The plaintiff never responded to the request for additional information and thus failed to perfect his FOIA request.  See Ramstack, 607 F. Supp. 2d at 102; Dale, 238 F. Supp. 2d at 103.  Accordingly, summary judgment is granted to the Navy because the plaintiff failed to exhaust his administrative remedies.

---

[7]  The plaintiff was also advised that "records of service members who are retired, deceased or otherwise separated [from the Navy] prior to 1996 are not maintained by the Navy," thus the agency "would have no documents responsive to such a request, even if the subject had been in the Navy rather than the Army."  Id. ¶ 5.  "Rather, . . . such records, if they exist, would be held by the" NPRC.  Id.

3. <u>The Marine Corps</u>

The Marine Corps' declaration explains that the plaintiff's request "identified no connection whatsoever between the [Marine Corps] and the individual about whom he sought information. It also did not indicate whether the requester was willing to pay fees or was requesting a waiver of fees." Defs.' Mem., Ex. F (Declaration of Mary Dolan ("Dolan Decl.")) ¶ 3. The plaintiff counters that "[t]he Marine Corps failed to state that a professional agency employee familiar with knowledge of the subject area would be unable to locate the records sought with a 'reasonable amount of effort.'" Pl.'s Mem. at 30. He further opines that "[i]n view of the fact that the Marine Corps, like other agencies, undoubtedly maintains records under the Privacy Act which are required to be retrievable by personal identifiers, [its] claim is not sustainable." <u>Id.</u> Additionally, the plaintiff argues that he has "constructively exhausted his administrative remedies," because rather than requesting additional information, the Marine Corps "simply transferred his request to the NPRC without conducting any search of its own records," and "did not notify him of his right to appeal this determination." Pl.'s Reply at 17.

The plaintiff's arguments are not convincing. A party requesting agency records under the FOIA must comply with the procedures set forth in the regulations promulgated by that agency, <u>see</u> 5 U.S.C. § 552(a)(3), and the "failure to comply with an agency's FOIA regulations for filing a proper FOIA request is the equivalent of a failure to exhaust." <u>Calhoun</u>, 693 F. Supp. 2d at 91 (citation and internal alterations omitted). Marine Corps' regulations "state that in order to meet the 'minimum requirements of a FOIA request,' a requester must 'reasonably describe the records being sought so that a knowledgeable official of the agency can conduct a search with reasonable effort.'" Defs.' Mem. at 13 (quoting 32 C.F.R. § 701.8(a)(1)). Furthermore, the

regulations provide that "[w]here a requester fails to submit a proper FOIA request, the regulations direct that a letter be sent to 'apprise the requester of the defect and assist him . . . in perfecting the request.'" Id. (quoting 32 C.F.R. § 701.8(a)(2)). Here, the Marine Corps represents that it complied with these regulations by referring the request to the Army and informing the plaintiff that additional information regarding Morrison's affiliation with the Marine Corps was needed. Defs.' Mem. at 14; Compl., Ex. 9 (Letter from the Marine Corps) at 1. The plaintiff never responded to the Marine Corps' letter. Defs.' Mem., Ex. F (Dolan Decl.) ¶¶ 4-5. In addition, the plaintiff's request did not indicate whether he was willing to pay the fees associated with his request or request a waiver of those fees, as required by Marine Corps' FOIA regulations. See 32 C.F.R. 701.8(a)(1) (2010); Defs.' Mem., Ex. F (Dolan Decl.) ¶ 3; see also Jones v. U.S. Dep't of Justice, 653 F. Supp. 2d 46, 49 (D.D.C. 2009) ("A FOIA requester is deemed to have failed to exhaust administrative remedies whenever he does not comply with the fee requirements."). Accordingly, summary judgment is granted to the Marine Corps because the plaintiff failed to exhaust his administrative remedies.

### 4. The DHS/CIS

The DHS/CIS contends that the plaintiff failed to exhaust his administrative remedies because, among other reasons, he failed to provide third-party authorization for the release of documents as mandated by 6 C.F.R. § 5.21(f). Defs.' Mem. at 29; see id., Ex. G (Declaration of Jill A. Eggleston) ¶¶ 6-9. In response, the plaintiff claims that the DHS/CIS's requirement of written consent, "[t]o the extent that this regulation bars [the agency] from accepting and processing a FOIA request for third[-]party records, . . . is an invalid regulation which is inconsistent with both the FOIA and the Privacy Act." Pl.'s Mem. at 35. The plaintiff cites

Grove v. CIA, 752 F. Supp. 28, 30 (D.D.C. 1990) for this proposition, stating that an agency may not refuse to process a request for third-party information in the absence of a privacy waiver because the Privacy Act is "not to be used as a barrier to FOIA access." Id. at 35 (quoting Greentree v. U.S. Customs Serv., 674 F.2d 74, 79 (D.C. Cir. 1982)).

As noted in connection with the claim against the Marine Corps, failure to comply with an agency's FOIA regulations amounts to failing to exhaust administrative remedies. Calhoun, 693 F. Supp. 2d at 91; West v. Jackson, 448 F. Supp. 2d 207, 211 (D.D.C. 2006). As the defendants point out, the pertinent DHS/CIS regulations state that "a requester of third-party information 'must provide a statement from the individual certifying the individual's agreement that records concerning the individual may be released.'" Defs.' Mem. at 15 (quoting 6 C.F.R. § 5.21(f)).

Here, there is no dispute that the plaintiff failed to comply with DHS's regulatory requirements that cover FOIA requests. Instead, the plaintiff argues that the regulations are invalid. This argument lacks merit. The plaintiff relies on Greentree as support for his position that the Privacy Act was not intended to preclude access to information subject to disclosure under the FOIA. Pl.'s Mem. at 35 (citing Greentree, 674 F.2d at 79). However, in Greentree the court was addressing the narrow question of whether the Privacy Act was intended to serve as a withholding statute under Exemption 3 of the FOIA.[8] 674 F.2d at 74-75. The District of Columbia Circuit held that it was not, id. at 89, but in any event neither the Privacy Act provision at issue in Greentree nor Exemption 3 of the FOIA are at issue in this case. Furthermore, the Circuit merely stated that just because access to information is restricted under

the Privacy Act does not necessarily mean it is also restricted under the FOIA; in fact, the court clarified that the Privacy Act protects third-party material from public access, absent "consent of the individual to whom the material pertains." Id. at 80. Thus, summary judgment is awarded to the DHS/CIS because the plaintiff failed to exhaust his administrative remedies.

5. <u>The Department of State</u>

The Department of State claims that the plaintiff did not respond to its request for additional information and was therefore unable to process his request. Defs.' Mem., Ex. I (Decl. of Margaret Grafeld ("Grafeld Decl.")) ¶¶ 5, 7. The plaintiff contests the Department of State's asserted need for additional information, arguing that its position "is either irrelevant— many persons not affiliated with the [Department] nonetheless are subjects of records it maintains—or simply inaccurate." Pl.'s Reply at 15-16. The plaintiff's irrelevancy argument is predicated on the fact that the Department of State regularly maintains records on people not affiliated with the Department, and that its position is inaccurate because the "disclosures made from Morrison's NPRC file" shows that "had [the Department of] State searched the embassy files [he] specified, it should have located responsive records," thus demonstrating that there is a basis for his request. Id. at 16.

The Court finds that the plaintiff did not exhaust his administrative remedies with respect to the Department of State. The agency follows the "published [d]epartment regulations at 22 C.F.R. § 171." Defs.' Mem., Ex. I (Grafeld Decl.) ¶ 7. The pertinent parts of section 171.1 state that "[a]ny request for records must describe the information sought in such a way . . . that an employee of the Department of State who is familiar with the subject area of the request can locate the records with a reasonable amount of effort," 22 C.F.R. § 171.1 (2010), and the "burden

19

of adequately identifying the record requested lies with the requestor," id. § 171.5(c).  Here, the

agency's declaration clearly indicates that the plaintiff failed to make a proper FOIA request,

given that its Information and Privacy Coordinator "could not process [the] request" "without

clarification of the records sought[] and provision of [the] additional information [that was]

requested."  Defs.' Mem., Ex. I (Grafeld Decl.) ¶ 7.  The declaration also makes clear that the

plaintiff did not respond to the Department of State's request for additional information, id. ¶¶ 5-

6, and thus failed to perfect his FOIA request.  Ramstack, 607 F. Supp. 2d at 102.  Accordingly,

summary judgment is awarded to the Department of State because the plaintiff failed to exhaust

his administrative remedies.

### 6.  The CIA

The CIA contends that the plaintiff failed to exhaust his administrative remedies with

respect to both the Morrison and Casey requests because, inter alia, the plaintiff did not

reasonably describe the records being sought.  Defs.' Mem. at 25-26.  As to the Morrison

request, because there was an indication "that the subject may have been born" outside of the

United States, the CIA requested additional identifying information, such as "complete date and

place of birth, and citizenship status."  Id., Ex. C (Nelson Decl.) ¶¶ 9-10.  In addition, the

plaintiff was asked to provide "some evidence of death" or, if the person was alive, "a signed

affidavit or declaration waiving some or all of his privacy rights."  Id. ¶ 10.  As to the Casey

request, the CIA asked for additional information such as Casey's "full name, place of birth and

citizenship status."  Id. ¶ 8.  The CIA explained that without this additional information it might

not be able to distinguish between individuals with the same or similar names.  Id.

The plaintiff counters that, with respect to his Morrison request, the CIA implicitly denied his request because "without provision of the requested information, including information [the plaintiff] already had provided, the [agency] . . . cancel[led] the request," thus he asserts that he has constructively exhausted his administrative remedies since the CIA never notified him of "his right to appeal this adverse determination." Pl.'s Reply at 14. As to the Casey request, the plaintiff argues that the agency's "attempt to support [its] actions with respect to [this request] . . . is bizarre." Id. The plaintiff contends that his request did "provide[] Casey's first and last names, middle initial, his date of birth . . . and place of death." Id. Furthermore, the plaintiff states that "[h]e also submitted a certificate that the [agency] accepted as proof of death." Id. at 14-15. The plaintiff asks the Court to find that the CIA acted unreasonably because there "was utterly no legitimate reason for it not to [have conducted the search] immediately." Id. at 15.

The Court finds that the plaintiff failed to exhaust his administrative remedies with respect to both CIA requests. In both instances, the CIA requested that the plaintiff provide additional identifying information, and he failed to do so. Defs.' Mem., Ex. C (Nelson Decl.) ¶ 11. The CIA's FOIA regulations state that if "the Agency determines that [the information provided by the requester] is not sufficient, the Agency may request additional or clarifying information." 32 C.F.R. § 1901.13(a) (2010). Because the plaintiff never perfected his request, he never exhausted his administrative remedies. Ramstack, 607 F. Supp. 2d at 102; Dale, 238 F. Supp. 2d at 103. Summary judgment is therefore awarded to CIA.

C.    The Claims Against the Air Force and the DIA

Like the agencies discussed above, the Air Force and the DIA argue that the plaintiff
failed to exhaust his administrative remedies. Defs.' Mem. at 25. As discussed in the first part
of this memorandum opinion, however, these two agencies ultimately conducted searches for the
documents requested by the plaintiff. As such, the Court determines that the "purposes and
policies underlying the exhaustion requirement" would not be undermined by reaching the merits
of the plaintiff's claims against these two agencies. See Wilbur, 355 F.3d at 677.

**III. THE PLAINTIFF'S CLAIMS AGAINST THE AIR FORCE, DIA, AND DOJ/FBI**

A.    Standard of Review

In a FOIA suit, an agency is entitled to summary judgment once it bears its burden of
demonstrating that no material facts are in dispute and that all information falling within the
class of information requested either has been produced, is unidentifiable, or is exempt from
disclosure. Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001).
Where, as here, the adequacy of an agency search is challenged, the "defending 'agency must
show beyond material doubt that it has conducted a search reasonably calculated to uncover all
relevant documents.'" Morley v. CIA, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (alteration omitted)
(quoting Weisberg v. U.S. Dep't of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The Court
applies a reasonableness test to determine the adequacy of the search methodology. Morley, 508
F.3d at 1114. Thus, a "FOIA search is sufficient if the agency makes 'a good faith effort to
conduct a search for the requested records, using methods which can be reasonably expected to
produce the information requested.'" Baker & Hostetler LLP v. U.S. Dep't of Commerce, 473
F.3d 312, 318 (D.C. Cir. 2006) (quoting Nation Magazine v. U.S. Customs Serv., 71 F.3d 885,

890 (D.C. Cir. 1995)).  Accordingly, once the agency has "shown that its search was reasonable, the burden is on the requester to rebut that evidence by showing that the search was not conducted in good faith."  Moore v. Aspin, 916 F. Supp. 32, 35 (D.D.C. 1996) (citing Miller v. U.S. Dep't of State, 779 F.3d 1378, 1383 (8th Cir. 1985)).  This rebuttal can be done either by contradicting the defendant's account of the search procedure or by presenting evidence showing the agency's bad faith.  Moore, 916 F. Supp. at 35-36.

In addition, the Court may grant summary judgment based on the information provided in the agency affidavits when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  Kurdyukov v. U.S. Coast Guard, 657 F. Supp. 2d 248, 252-53 (D.D.C. 2009) (Walton, J.) (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)).  "Agency affidavits [submitted in FOIA cases] are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents."  SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).  With these concepts as its guide, the Court will evaluate the adequacy of the searches conducted by the Air Force, the DIA, and the DOJ/FBI (as to the Rees request), as well as the propriety of the FOIA exemptions asserted by the DOJ/FBI (as to the Morrison request).

B.    The Adequacy of the Defendants' Searches

1.    The Air Force

As noted earlier in this opinion, the plaintiff's submission to the Air Force requested "all records on or pertaining to Mr. Robert Bryant Morrison, also known as Egbert Clair Morrison, Wayne West and Wayne Forest West, wherever they may be filed or located at . . . your agency or in its repositories, and in whatever form or format they may be maintained."  Compl., Ex. 1 (Letter to the Air Force) at 1.  The request also provided two potential birth dates and noted that Mr. Morrison "enlisted in the Army on February 17, 1947 [and] was assigned #AF-38-442-567." Id.  The Air Force referred this request to the following agencies and governmental offices: the AFOSI, the AFPC, the Army, and the NPRC.  Defs.' Mem., Ex. A (Price Decl.) ¶ 7.

The AFOSI "conducted an electronic search for files on the Defense Central Index of Investigation . . . using the search terms 'Egbert Morrison,' 'Wayne West,' and 'Robert Morrison' as well as by the serial number and potential birth dates given by [the] plaintiff."  Id. ¶ 8.  That office also performed "[a]n additional physical and electronic search using the same search terms and criteria [used by] the AFOSI Office of Special Projects."  Id.  Both searches "failed to find any responsive records."  Id.  As to the AFPC, that office "conducted a physical and electronic search for records using the search terms 'Robert Bryant Morrison,' 'Egbert Clair Morrison,' 'Wayne West,' and 'Wayne Forest West' as well as by the serial number and potential birth dates given by [the] plaintiff."  Id. ¶ 9.  The AFPC searched in several different databases, the Military Personnel Data System, the Defense Eligibility Enrollment Reporting System, the Automated Records Management System, and the National Archive Record

Administration ("NARA") database.  Id.  With the exception of two records found in the NARA database, the search did not locate any responsive documents.  Id.

The defendants claim that the search performed by the Air Force was adequate because the agency offices used an appropriate combination of search terms and searched numerous different databases.  Defs.' Mem. at 34-35.  The plaintiff responds that the search was inadequate because the Air Force did not certify that it searched "all [of] the indices that may contain relevant records."  Pl.'s Mem. at 41.  In addition, the plaintiff asserts that the Air Force "fail[ed] to . . . search[ ] under logical variants of [the names the plaintiff provided], including spelling variants . . . . [, which] is particularly important with electronic searches, where a single different digit can result in a 'no hit' response."  Id. at 42.  Upon reviewing the affidavit submitted by the Air Force, the Court concludes that the search performed by the Air Force was adequate.[9]

As outlined above, the Air Force declaration describes the different databases that were searched and the terminology used to perform the searches.  The Air Force searched for all of the names provided in the plaintiff's request, as well as the serial number and suspected dates of

_____

[9]  As to the NARA database, the Air Force explains that the search of this "database revealed the possible existence of two responsive records."  See Defs.' Mem., Ex. A (Price Decl.) ¶ 9.  The Air Force states, however, that because it "is not in possession of any records found in the NARA database," it referred the request to the NPRC, which is a division of the NARA.  Id. ¶¶ 9, 11.  The NPRC subsequently conducted a search and located two responsive records, which was a file catalogued under Mr. Morrison's name and serial number.  Id. ¶ 12.  However the first record "was initially stored in an area of [the] NPRC's warehouse which was severely damaged by fire a number of years ago."  Id.  At the time the Air Force affidavit was submitted to the Court, the "NPRC [was] in the process of retrieving and reconstructing the [record]," and planned to respond to the plaintiff directly when that process was complete.  Id.  Because an agency is required to produce only those records in its custody and control at the time of the FOIA request, McGehee v. CIA, 697 F.2d 1095, 1110 (D.C. Cir. 1983), the Court has no authority to compel any action by the Air Force with regard to these two records.  Nor can the Court compel any action by the NPRC, as it is not a defendant in this action.  Presumably, however, the plaintiff may submit a FOIA request to the NARA, of which the NPRC is a component.  See National Archives and Records Administration Freedom of Information Act (FOIA) Reference Guide, available at http://www.archives.gov/foia/foia-guide.html.

birth he submitted. Defs.' Mem. Ex. A (Price Decl.) ¶¶ 8-9. An agency's search "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the [plaintiff's] specific request." Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986). Measured against the plaintiff's request, the Court is satisfied that the Air Force undertook "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Baker & Hostetler, 473 F.3d at 318 (citation and internal quotation marks omitted).

The plaintiff's various arguments do not provide a basis to reject the Air Force's account of the search procedure or demonstrate that the agency acted in bad faith. To begin with, the plaintiff's contention that the Air Force did not certify that it searched "all the indices that may contain relevant records," Pl.'s Mem. at 41 (emphasis added), does not persuade the Court that the search procedure employed by the Air Force was deficient. The agency has already explained that it searched through several different databases. Even if other indices existed, "'[t]here is no requirement that an agency search every record system' in which responsive documents might conceivably by found." Clay v. U.S. Dep't of Justice, 680 F. Supp. 2d 239, 245 (D.D.C. 2010) (Walton, J.) (quoting Oglesby, 920 F.2d at 68). Similarly, the plaintiff's argument that the Air Force neglected to search for "logical . . . [and] spelling variants" of the names provided in the request, Pl.'s Mem. at 42, does not convince the Court that summary judgment is inappropriate. As noted, the FOIA does not mandate a "perfect" search, only an "adequate" one. Meeropol, 790 F.2d at 956; see also Maynard v. CIA, 986 F.2d 547, 560 (1st Cir. 1993) ("Because the scope of a search is limited by a plaintiff's FOIA request, there is no

general requirement that an agency search secondary references or variant spellings.").  The Air Force, having demonstrated that such a search was conducted, is awarded summary judgment.

    2.    <u>The DIA</u>

The plaintiff also challenges the adequacy of the search conducted by the DIA.  <u>See</u> Pl.'s Mem. at 43.  As with his argument challenging the search conducted by the Air Force, the plaintiff asserts that the search by the DIA was deficient because the agency did not account for several "obvious variations of the name" he provided and did not search for "spelling variations of Morrison's last name."  <u>Id.</u>

According to the declaration submitted by Alesia Y. Williams, the DIA searched its "two primary databases," the WISE and the ISM.  Defs.' Mem., Ex. D (Williams Decl.) ¶ 9.  The WISE database contains over sixty million electronic messages going back to January 1, 1987, and the ISM contains approximately 2.8 million records dating back to 1965.  <u>Id.</u>  In conducting its search of the WISE database, the agency searched for the names "Robert Bryant Morrison, Morrison Robert Bryant, Robert B Morrison, Morrison Robert B, Egbert Clair Morrison, Morrison Egbert Clair, Egbert C Morrison, Morrison Egbert C, Wayne West, West Wayne, Wayne Forest West, West Wayne Forest, Wayne F West, and West Wayne F."  <u>Id.</u> ¶ 10.  For the ISM database, the agency searched for the names "Robert Bryant Morrison, Morrison Robert Bryant, Robert B Morrison, Morrison Robert B, Egbert Clair Morrison, Morrison Egbert Clair, Egbert C Morrison, Morrison Egbert C, Wayne West, West Wayne, Wayne Forest West, West Wayne Forest, Wayne F West, West Wayne F."  <u>Id.</u> ¶ 11.  Neither search turned up any responsive records.  <u>Id.</u> ¶¶ 10-11.

For the same reasons discussed in connection with the plaintiff's claim against the Air Force, the Court concludes that the search conducted by the DIA was reasonably calculated to produce the information requested. Moreover, the plaintiff has not provided any evidence to show that the DIA acted in bad faith. Summary judgment is therefore awarded to the DIA.

3.    The DOJ/FBI Request Regarding Gilbert Enoch Rees, Jr.

The plaintiff also challenges the adequacy of the DOJ/FBI's search of its electronic surveillance database in connection with his request for information related to Gilbert Enoch Rees, Jr. See Pl.'s Mem. at 43-44. In particular, the plaintiff claims that the search was inadequate because the affidavit provided by the DOJ/FBI fails to describe how "electronic records [were] stored and how [they] were . . . located prior to the creation of the manual [electronic surveillance] indices" in 1960. Id. at 44. The plaintiff surmises that "[s]ome system for retrieving them must have existed. What was it and how did it work?" Id. In their reply, the defendants explain that the "FBI lacks searchable general [electronic surveillance] indices prior to 1960 because there is no central index of electronic files prior to the creation of the [electronic surveillance] index in 1966." Defs.' Reply at 19-20. Relying on a supplemental declaration submitted by the DOJ/FBI, the defendants add that "[w]hile the FBI has located certain indexed records dating back to 1940, they are not automated and are limited to national security issues." Id. at 20; see id., Ex. 3 (Declaration of Dennis J. Argall ("Argall Decl.")) ¶¶ 5-7 & n.2. The defendants also note that "[t]he FBI nonetheless conducted a search of the pre-1960 national security indices for Gilbert Enoch Rees, Jr." in the field offices where the plaintiff filed his requests and did not find any responsive records. Defs.' Reply at 20.

The Court agrees with the defendants that the search conducted by the DOJ/FBI related to the Rees document request was adequate. As discussed supra in section I.I.2 of this opinion, supra at 9-11, the DOJ/FBI searched the "see" files in its central records system at FBI headquarters and in four field offices and also searched its electronic surveillance database for "mentions" and "overhears." Defs.' Mem, Ex. H (Hardy Decl.) ¶¶ 12, 34-37 & n.3. Those searches did not locate any responsive records. As to the plaintiff's contentions regarding pre-1960 electronic records, Pl.'s Mem. at 43-44, the DOJ/FBI's supplemental declaration makes clear that, to the extent a field office even had records of this sort, those records were searched and no references to Gilbert Enoch Rees Jr. were found. Defs.' Reply, Ex. 3 (Argall Decl.) ¶ 7 & n.2. In the Court's judgment, the DOJ/FBI's actions demonstrate that it "conducted a search reasonably calculated to uncover all relevant documents." Morley, 508 F.3d at 1114 (internal citation omitted). Moreover, the plaintiff has not provided any proof to show that the DOJ/FBI acted in bad faith. Accordingly, summary judgment is awarded to the DOJ/FBI regarding the plaintiff's Gilbert Enoch Rees Jr. request.

C.      The Exemptions Claimed by the DOJ/FBI

The DOJ/FBI invokes Exemptions 6 and 7(C) regarding the plaintiff's request for records pertaining to Mr. Morrison. See Defs.' Mem. at 41-45. The plaintiff, relying on Davis v. Dep't of Justice, 460 F.3d 92, 98 (D.C. Cir. 2006), claims that these exemptions are inappropriately invoked because the DOJ/FBI never took any steps to ascertain whether Mr. Morrison was deceased. Pl.'s Mem. at 46. For the reasons set forth below, the Court finds that the DOJ/FBI properly asserted Exemption 7(C), and therefore need not determine the applicability of Exemption 6. See Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec., 736 F. Supp. 2d 202,

210 n.3 (D.D.C. 2010) (declining to consider Exemption 6 after concluding that Exemption 7(C) was properly asserted).

Exemption 7(C) applies to "records or information compiled for law enforcement purposes," to the extent that their disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[10] In determining whether this Exemption applies, the Court must balance "the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Kurdyukov, 657 F. Supp. 2d at 255 (quoting Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)). The public interest "sought to be advanced [must be] a significant one, an interest more specific than having the information for [one's] own sake." Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004).

An individual's death diminishes, but does not eliminate, his privacy interest in the nondisclosure of any information about him contained in law enforcement records. Davis, 460 F.3d at 98; see Schrecker v. U.S. Dep't of Justice, 254 F.3d 162, 166 (D.C. Cir. 2001) ("[O]ne's own and one's relations' interest in privacy ordinarily extend beyond one's death."). Thus, in balancing an individual's privacy interests against any public interest in disclosure as required by Exemption 7(C), an agency must generally take "the fact of death . . . into account." Davis, 460 F.3d at 98. The agency may only factor death into the equation if it first makes "a reasonable

---

[10] The DOJ/FBI notes that any "documents responsive to [the] [p]laintiff's request for records regarding Mr. Morrison would have been prepared for a law enforcement purpose and thus qualify for consideration under Exemption (b)(7)." Defs.' Mem. at 44. The plaintiff does not dispute this representation, see Pl.'s Mem. at 45-46, and indeed his request to the FBI stated that "in connection with criminal investigation(s), Mr. Morrison was assigned FBI #3345911," Compl., Ex. 21 (Letter to the FBI) at 1. The Court therefore agrees with the DOJ/FBI that the records the plaintiff requested from it would have been compiled for law enforcement purposes and fall under Exemption 7(C).

effort to ascertain life status." Id. (internal citations omitted). As the plaintiff points out, Pl.'s Mem. at 46, the DOJ/FBI did not make such a determination in this case. Indeed, neither of the two DOJ/FBI declarations offers any indication that the agency made an effort to ascertain the life status of Mr. Morrison. Defs.' Mem., Ex. H (Hardy Decl.) ¶¶ 39-40; Defs.' Reply, Ex. 3 (Argall Decl.) ¶ 8. Rather, the DOJ/FBI explains that that the plaintiff did not provide a privacy waiver or any proof of death, as required by internal DOJ/FBI policy, and thus represents that "[c]onducting a search for records pertaining to a third party without a Privacy Waiver or proof of death would itself be a privacy violation." Defs.' Mem., Ex. H (Hardy Decl.) ¶ 40.

While on first blush it appears that the DOJ/FBI should have taken the life status of Mr. Morrison into account, "[t]he effect of an individual's death on [their] privacy interests need not be factored into an Exemption 7(C) balancing test . . . where no public interest would be served by the disclosure of that individual's name or other identifying information." Clemente v. FBI, 741 F. Supp. 2d 64, 85 (D.D.C. 2010). As noted, even after death, a person and their relations retain some privacy interest, and "something, even a modest privacy interest, outweighs nothing every time." Consumers' Checkbook Ctr. For the Study of Servs. v. U.S. Dep't of Health & Human Servs., 554 F.3d 1046, 1056 (D.C. Cir. 2009) (citation and internal quotation marks omitted). Thus, for the DOJ/FBI's failure to consider Mr. Morrison's life status to be relevant, and actually "trigger the balancing of public interests against private interests" under Exemption 7(C), the plaintiff "must (1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." Martin v. Dep't of Justice, 488 F.3d 446, 458 (D.C. Cir. 2007) (citation omitted). And, "the only public interest relevant for purposes of

Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" Davis, 968 F.2d at 1282 (quoting U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 773 (1989)).

Applying that understanding of what constitutes a public interest, the plaintiff's request for information pertaining to Mr. Morrison must fail. As noted at the outset of this opinion, the plaintiff seeks this information "to obtain records regarding persons who . . . may figure in some of the mysterious circumstances concerning his father's death in Texas in 1946." Compl. ¶ 1. Yet, disclosing information about the activities of Mr. Morrison, apparently a third party with no connection to the plaintiff, see Compl., Ex. 21 (Letter to the FBI) at 1-3, and how those activities might relate to the death of the plaintiff's father over sixty years ago would reveal little or nothing (based on the information provided by the plaintiff) about the FBI's own conduct or shed any light on the activities of the government in general. See Reporters Comm., 489 U.S. at 774 ("The FOIA's central purpose is to ensure that the Government's activities be opened to the sharp eye of public scrutiny, not that information about private citizens that happens to be in the warehouse of the [g]overnment be so disclosed."); Lewis v. U.S. Dep't of Justice, 609 F. Supp. 2d 80, 84 (D.D.C. 2009) ("The D.C. Circuit has consistently held that [E]xemption 7(C) protects the privacy interests of all persons mentioned in law enforcement records, including investigators, suspects, witnesses and informants, and has determined that such third-party information is categorically exempt from disclosure under [E]xemption 7(C), in the absence of an overriding public interest in its disclosure.") (internal quotation marks and citations omitted). Accordingly, because the plaintiff has not articulated a cognizable public interest with respect to the Morrison request, summary judgment as to this request is awarded to the DOJ/FBI.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that the plaintiff has failed to exhaust his administrative remedies with respect to many of his FOIA requests submitted to the defendants and those defendants are therefore entitled to summary judgment. In addition, the Court concludes that the remaining defendants are entitled to summary judgment because the searches they performed were adequate or they properly asserted FOIA exemptions as the basis for not producing responsive documents.

**SO ORDERED** this 22nd day of June, 2011.[11]

_____/s/_____
REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE

---

[11] This Memorandum Opinion accompanies the Order issued on September 30, 2010 and the Final Order issued contemporaneously with this Memorandum Opinion.